[Civ. No. 1173.   Third Appellate District.—October 3, 1913.]

HUGH DOUGHERTY et al., Appellants, v. UNION TRAC-
TION COMPANY (a Corporation), Respondent.

STREET-RAILWAY—PASSENGER ATTEMPTING TO ALIGHT FROM MOVING CAR —CONTRIBUTORY NEGLIGENCE.—Where a passenger on a street-car attempts, without notifying the conductor, to alight while the car is in motion, acting upon the assumption that because the speed of the car has been slackened it will stop at the next crossing, the negligence of the passenger precludes her from recovering from the

23 Cal. App.—2

railway company for injuries received by falling to the ground at the time of an alleged sudden jerk or lurch of the car.

ID.—SLACKENING OF SPEED OF CAR—ASSUMPTION THAT IT WILL STOP.— It is not for a passenger, desiring to alight from a street-car at a particular place, but not having notified the conductor of such desire, to assume, and to act upon such assumption, that merely because the speed at which the car has been traveling has been diminished for some reason, it is to be stopped at the next street crossing, especially where such crossing is not one where the cars are required to stop in any event but only on signal.

ID.—PASSENGER ARISING WHILE CAR IS IN MOTION—CONTRIBUTORY NEGLIGENCE.—For a passenger to arise from his seat, preparatory to leaving the car, while it is still in motion, raises no presumption of negligence on his part, or, in other words, is not negligence *per se;* but when a passenger arises from his seat in a moving car for any purpose, he must exercise a reasonable or proper degree of care to protect himself from falling off the car, or, if he is inside, from falling against any object properly in the car, otherwise any injuries he may thus sustain will legally be imputed directly to his own negligence.

ID.—CONDUCTOR—DUTY TOWARD PASSENGERS WHILE COLLECTING FARES. When a street-car conductor is collecting fares, he is not to be expected to perform the impossible act of watching or keeping his eyes on all the passengers in the car, and there is, therefore, some responsibility very justly cast upon the passengers themselves to look out for their own safety, and before attempting to leave a moving car, or when preparing to do so, to notify the conductor in some proper manner of their desire to alight.

ID.—REMARKS AND INSTRUCTIONS OF COURT—WHEN NOT PREJUDICIAL.— If the case is one which the court should take from the jury, because the personal injuries for which the plaintiff is suing were due to her own and not to the defendant's negligence, errors in the matter of the court's instructions and remarks are not prejudicial to the plaintiff.

ID.—NEW TRIAL ON GROUND OF IMPROPER REMARKS OF COURT—REVIEW ON APPEAL.—Where the affidavits of the plaintiffs on their motion for a new trial on the ground of improper remarks by the court in the presence of the jury, are contradicted by the affidavits of ten of the jurors that they heard no such remarks, and the affidavit of the judge that he did not make them within the hearing of the jury, the decision of the trial court on the issue is conclusive on the appellate court.

APPEAL from an order of the Superior Court of Santa Cruz County refusing a new trial.    Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

John H. Leonard, for Appellants.

H. A. Van C. Torchiana, W. P. Netherton, and Stratton, Kaufman & Torchiana, for Respondent.

HART, J.—The plaintiffs sued the defendant, a corporation, which maintains and operates an electric railway in the city of Santa Cruz, for damages in the sum of fifteen thousand dollars for personal injuries inflicted upon the plaintiff, Catherine, through the alleged negligence of the defendant.

The cause was tried by jury, who returned a verdict for the defendant, and the plaintiffs prosecute this appeal from the order denying them a new trial.

The answer, among other things, sets up contributory negligence on the part of the plaintiff, Catherine, and avers that but for negligence on her part she would not have met with the accident and received the injuries sustained by her.

The points urged for a reversal of the order are that the evidence discloses negligence by the defendant and no negligence by said Catherine, that the court erred in its rulings respecting the evidence, that the trial judge prejudiced the rights of the plaintiffs by certain remarks alleged to have been made by him in the presence of the jury, and that error was committed in the matter of the giving and refusing to give certain instructions.

The accident in which Mrs. Dougherty received the injuries complained of occurred on the twelfth day of May, 1909. Her version of how the accident happened is as follows: "I remember the journey on the street-cars in this city on May 12th, 1909. I took the car at the corner of Morrissey and Soquel avenues, transferred to the Mission Street car, and gave my transfer; when we got to the Bedell, I turned to motion the conductor to stop; he had gone through the car—at that moment he started through the car so I could not attract his attention, out on the front platform. The car slowed up. I supposed it was going to stop and stood up and took one step and the car jerked and threw me on the ground. I could not attract the conductor's attention, as I was on the back of the car, on the west side as the car was going southwesterly on Mission Street. I was seated on the outside of the car, and the seats are lengthwise on the car. If there was a person

seated in front of the car, it would have been impossible for me to pass that person without going down on the steps of the car to get where the conductor was. When I arose from my seat, the car had almost stopped. It slackened slowly. It was going quite fast when we passed the Bedell. The Bedell is not quite a block this side of Otis Street, but I do not know the distance. I had a basket in one hand and took hold of the pole with the other, the up and down pole on the car. I took one step—this step took me down a step to the lower step. I do not remember whether there were two steps on the car or not. ` I was thrown on the ground and stunned.''

It appears that at about the point where Mrs. Dougherty was thrown to the ground the motorman slackened the speed of the car to allow two passengers—one Peakes, and one Bibbins—who were sitting on the outside at the front part of the car—to alight. Peakes testified that it had always been his practice, when returning to his home on the street-cars, to leave the car, upon reaching his residence, while it was still in motion, the motorman always reducing the speed of the car to enable him to alight. On the occasion of the accident he left the car under those circumstances.

The conductor, Lang, testified that the car made a stop at Walnut Avenue, where a passenger boarded the car. Otis Street, on which the accident happened, was the next street to be reached after leaving Walnut Avenue. The passenger just referred to stepped and stood on the front platform and, immediately after the car started, the conductor went forward for the purpose of collecting the fare from said passenger. Lang proceeded: ''I just went outside the front door, took his fare and turned around to go back in the car; saw Mr. Peakes on the front end of the car. Of course, I expected Mr. Davis, the motorman, to slow down and let him off; then I looked around; there was nobody to board the car. I was just inside the door; he then called for a signal that all was clear with two taps on the gong. I looked back through the car and saw that everything was all right, which I could see from the position I was in; all was clear and I gave him the signal, two bells, the signal that all was right; then I walked back to the middle of the car and I saw Mrs. Dougherty, this lady, I did not know her at the time, stepping down on the steps. I hurried toward her and at the same time gave a bell to the

motorman to stop, but before I could get to her and warn her about her danger, she stepped off or apparently stepped off the car and fell to the ground. . . . I was at the rear end of the car, near where Mrs. Dougherty was seated, very close to her, and she never said anything to me at any time about desiring to alight at Otis Street. She did not give me a signal, and I did not have any knowledge of the fact that she desired to alight at Otis Street at all. After the car slowed down sufficiently for Mr. Peakes and Mr. Bibbins to alight, we just gradually increased our speed; there wasn't any jerking or sudden start that I noticed. I was standing up all the time, and certainly would have noticed it if there had been. After collecting the fare from the passenger who boarded at Walnut Avenue, I went right back, turned right around and went right back to the rear end. The doors of the car were left open, but in going back, I had to turn and pass through the inclosed part of the car. . . . I was in a position (when he gave the motorman the signal) where I could see any one in the inside or in the rear of the car, but did not notice Mrs. Dougherty in particular; there was no passenger standing at that time. . . . If there had been I could have seen them. . . . I did not notice her particularly from any other passenger; there were probably about 17 on the car at the time. There were also passengers inside of the body of the car.''

The witness, McCormack, an employee of the defendant and connected with its operating department for a number of years, said that the cars which were operated by the company at the time of the accident were equipped with a rope drum brake. ''Air brakes and rope brakes,'' he continued, ''are the two brakes generally used on the cars, but the car upon which the accident happened was equipped with a rope brake. The rope is operated around a drum. It is so constructed that, in stopping a car, it must stop gradually, and in starting up it will start gradually. It is impossible to start a car with a jerk when equipped with a rope brake. It is so constructed as to wrap around the drum and the weight of the rope on the drum makes it impossible to release the brakes instantly. While the air brakes can be released instantly and, of course, the car can start with a jerk, it is quite different with a rope brake.'' McCormack further testified that on certain parts of

the defendant's lines of railway there are certain places where the cars are required to stop whether or not there are passengers to leave or take the car thereat. At all other points, passengers desiring to leave or board the cars must signal the conductor or motorman. It is further made to appear that the point at which Mrs. Dougherty desired to leave the car and where she fell to the ground was not one of the regular stopping places.

A Mrs. Linstedt was sitting between Mrs. Dougherty and the main body of the car, and her testimony shows that it was not possible for the latter to have passed in front of Mrs. Linstedt without getting down on the steps. Mrs. Linstedt did not arise from her seat to let Mrs. Dougherty pass. She testified that she was not requested by Mrs. Dougherty to arise and that had such a request been made she would have certainly done so.

The question whether the car made a sudden lurch or jerk after its speed had been slackened to let two passengers swing to the ground while it was still in motion and which sudden lurch, it is claimed, caused the precipitation of Mrs. Dougherty to the ground from the step to which she had descended and upon which she was standing, was entirely one for the jury's determination. And upon that question there is a distinct conflict in the evidence, and the verdict must, therefore, be construed as a finding by the jury that the car was caused to make no such sudden movement. But even if it were true that the car did make a sudden lurch at the time and that by reason thereof Mrs. Dougherty was thrown to the ground, still, according to her own testimony, she herself was wholly to blame for the accident. She did not notify or signal the conductor that she desired to alight, but upon her own volition arose and placed herself in a position which, even under ordinary circumstances, was one which would be attended by more or less peril. The peril of her situation was increased in some measure by the fact that she was carrying and holding in one hand a basket, whereby she was necessarily handicapped to some extent in moving from the car to the step and, after reaching the step, in securing herself against falling. She knew that the conductor was at the opposite end of the car at the time, and of course knew that he could not then have known that she desired to leave the car.

But Mrs. Dougherty said that, the speed of the car having been slackened, she supposed it was going to stop at the next crossing, where it was her desire and purpose to alight. What she supposed the car was going to do is no excuse for her carelessness. It is not for a passenger, desiring to alight from a street-car at a particular place, and who has not notified the conductor of such desire, to assume, and to act upon such assumption, that, merely because the speed at which the car has been traveling has been diminished for some reason, it is to be stopped at the next street crossing toward which it is traveling, especially where, as was true in this case, the next crossing was not one where the cars are required to stop in any event but only on a signal to the conductor or motorman by any one desiring to leave or board the car at that point.

No fault can be found with the cases, cited by the plaintiffs, in which it is held that the fact that a passenger arises from his seat, preparatory to leaving the car, while it is still in motion, raises no presumption of negligence on his part, or in other words, is not negligence *per se.* (See *Capital Traction Co.* v. *Brown,* 25 App. D. C. 473, [10 Ann. Cas. 813, 12 L. R. A. (N. S.) 831]; *Scott* v. *Bergen County Traction Co.,* 63 N. J. L. 407, [43 Atl. 1060]; *Alton R. Gas & Elec. Co.* v. *Webb,* 219 Ill. 563, [76 N. E. 687].) There is obviously nothing in the mere act of a passenger arising from his seat in a street or any other kind of a car while it is in motion which of itself constitutes negligence, but it will not be doubted, and the cases referred to do not otherwise hold, that, when a passenger arises from his seat in a moving car for any purpose, he must exercise a reasonable or proper degree of care to protect himself from falling off the car, or, if he is inside, from falling against any object properly in the car, otherwise any injuries he may thus sustain will legally be imputed directly to his own negligence. In this case, as has been shown, the injured plaintiff did more than simply to arise from where she had been sitting—she, obstructed in the free use of both hands as a protection against possible accident by engaging one in the carrying of a basket, descended to that part of the platform where the conductor usually stands, and thus remained until thrown to the street.

As to the claim that the defendant was negligent in that its conductor left the rear end of the car to go to the forward end for the purpose of collecting a fare from a passenger who had just boarded the car and taken a position on the forward platform, the reply is that the evidence clearly shows that that officer was then merely engaged in performing a duty which was required of him in the capacity in which he was acting for his employer. He was required as such employee to collect fares from the passengers, wherever they might be located on the car, and when he left the rear platform, where Mrs. Dougherty was then sitting, for that purpose, he was merely engaged in the doing of an act which Mrs. Dougherty well knew that his duties compelled him to do and which she, in common with all the other passengers and, indeed, with the whole traveling public, expected and anticipated that he would do. When performing that duty, a street car conductor is not to be supposed or expected to perform the impossible act of watching or keeping his eyes on all the passengers in the car, and there is, therefore, some responsibility very justly cast upon the passengers themselves to look out for their own safety, and before attempting to leave a moving car or when preparing to do so, to notify the conductor in some proper manner of their desire to alight. A passenger who fails to do this, does not exercise the care with which he is charged, viz.: that degree of care which an ordinarily careful and prudent person, having due regard for his safety, would exercise and be expected and required to exercise under similar circumstances.

Under the view we take of the evidence, as indicated by the foregoing, the defendant having been in no respect guilty of negligence and the damage sustained by Mrs. Dougherty directly the result of her own, the court below should have taken the case from the jury. It follows, therefore, that any errors committed by the court in the matter of the instructions or in its rulings or in the alleged prejudicial remarks of the judge in the presence of the jury are without prejudice. It may, however, be remarked that the court's charge, though it became, by reason of the fact that the evidence disclosed negligence in the injured plaintiff and none in the defendant, but little more than a mere abstract statement of the law covering the various elements entering into such a case,

is not obnoxious to any of the criticisms directed against it by the plaintiffs. The instructions submitted by the plaintiffs and disallowed by the court involved the exposition of no principle not correctly laid down in the court's charge.

It may further be remarked that the court made no error in its rulings upon the evidence which was prejudicial to the plaintiffs, and, as to the alleged remarks of the court in the presence and hearing of the jury, it is to be observed that the affidavits filed and pressed by the plaintiffs on their motion for a new trial setting forth the alleged remarks and the charge that they were made within the hearing of the jury were contradicted by affidavits of ten of the jurors, who deposed that they heard no such remarks as were thus imputed to the judge, and by the affidavit of the latter, who therein denied that the remarks referred to were made in the presence or within the hearing of the jury. It results that, if the point were important here, the decision of the trial judge upon the issue thus made would, under the conflict so disclosed, be conclusive upon this court.

The order from which this appeal is prosecuted is affirmed.

Chipman, P. J. and Burnett , J., concurred.