[Civ. No. 3962.  First Appellate District, Division Two.—October 31, 1921.]

ELIZA JONES, Respondent, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Appellant.

[1] NEGLIGENCE — PERSONAL INJURIES — ACTION FOR DAMAGES — EVIDENCE—VERDICT NOT EXCESSIVE.—In this action for damages for personal injuries alleged to have been caused by defendant in negligently starting one of its cars on which plaintiff was a passenger after the car had stopped to allow passengers to alight therefrom, as a result of which plaintiff, while in the act of alighting, was thrown to the pavement and injured, in view of the plaintiff's condition of health before the accident, the actual loss of money from her business, the expense to which she had been put for medical attention and a nurse, and the pain and suffering she was caused, the verdict for two thousand five hundred dollars damages was not excessive.

[2] ID.—DESIRE OF PASSENGER TO LEAVE CAR—DUTY TO NOTIFY CONDUCTOR—IMPROPER INSTRUCTION.—In such an action, where the evidence shows without contradiction that the conductor gave the signal to stop and that the car was at a complete standstill before plaintiff made any attempt to get off the car, instructions to the effect that the carrier is not liable if the passenger does not notify the conductor of her desire to leave the car, nor is it liable if, when the car stops for a reasonable time, the passenger has not previously nor does not then signify to the conductor her intention of alighting, and the conductor does not actually see her in the act of alighting, are improper and are rightly refused.

[3] ID. — ACT OF PASSENGER IN ALIGHTING — RIGHT TO ASSUME CAR WILL REMAIN STOPPED.—In such case, the street-car being at a standstill, and the daughter of plaintiff having alighted safely and remained standing with her hand outstretched to assist plaintiff, and plaintiff being in the act of stepping down from the car, she had a right to assume that a reasonable time would be given her to alight, and that the conductor, before starting the car, would see that no passenger was in the act of alighting.

[4] ID. — ATTEMPT TO ALIGHT AFTER SIGNAL TO START GIVEN — EVIDENCE—ERRONEOUS INSTRUCTION.—Plaintiff and her daughter and

1.  Duty of street-car company to see that passenger has alighted before starting car, note 11 L. R. A. (N. S.) 140.

Excessive verdicts in actions for personal injuries other than death, notes, 16 Ann. Cas. 8; Ann. Cas. 1361; L. R. A. 1915F, 30; inadequate verdicts, notes, Ann. Cas. 1916B, 384, 450, 451, 454, 455, 457.

four apparently disinterested witnesses having testified that plaintiff had started to get off the car before the conductor gave the signal to start the car, and neither the conductor nor any other witness for the defendant having testified that plaintiff started to alight from the car after the signal had been given to start, it was not error to refuse a requested instruction which assumed a fact not in evidence, viz., that plaintiff started to get off the car after the signal was given by the conductor to go ahead.

[5] ID.—DUTY TO PASSENGER ATTEMPTING TO ALIGHT—INSTRUCTIONS. In this action, while the use of the word "such" before "passengers" in an instruction, "It is the duty of a common carrier, after having stopped its car to enable passengers to alight, to know before starting up the car again whether such passengers in the act of attempting to get off are in a position to be injured by the starting up of the car before such passengers can alight, and it would be negligence to start the car under such circumstances suddenly, and thereby injure the passengers," rendered the instruction open to the criticism that it did not precisely cover the facts in evidence, the error was not prejudicial to the defendant.

[6] ID.—NECESSITY FOR SIGNAL TO STOP—DUTY TO PASSENGERS NOT SIGNALING.—It is the duty of the conductor of a street-car, after having stopped the car to enable a passenger to alight, to know, before starting the car again, not only that the passenger upon whose signal the car was stopped is not in the act of alighting, but also to know that no other passengers who may also have relied upon this signal to stop are in the act of alighting.

[7] ID.—DUTY TO PASSENGERS WHO DID NOT GIVE STOP SIGNAL.—The street-car having stopped to allow passengers to alight and plaintiff's daughter having alighted and being engaged in assisting plaintiff, who was in the act of alighting when the car started, the defendant was as much obligated to see that plaintiff was not in the act of alighting as it would have been if plaintiff had been the passenger who had actually given the signal to stop.

[8] ID. — DUTY OF CARRIER TO PASSENGER — PROOF OF INJURY — PRESUMPTION OF NEGLIGENCE—BURDEN OF PROOF.—In an action for damages for personal injuries received by a street-car passenger the jury is properly instructed that "The carrier of passengers is required to exercise the highest degree of care in their transportation, and is responsible for injuries received by them while in the course of transportation which might have been avoided by ordinary care. Hence, when it is shown that the injury to the passenger was caused by the act of the carrier in operating the instrumentalities employed in its business, there is a presumption of negligence which throws upon the carrier the burden of showing that the injury was sustained without any negligence on its part."

[9] ID.—REASONABLE APPREHENSION OF PERMANENT DISABILITY—MENTAL SUFFERING—DAMAGES.—In such an action, the mental suffering

endured by the plaintiff up to the time of the trial, due to her reasonable apprehension of permanent disability (which reasonable apprehension was the proximate result of the accident), is an element to be considered by the jury in arriving at its verdict, and the jury is properly so instructed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, K. W. Cannon and Ivores R. Dains for Appellant.

William P. Hubbard for Respondent.

LANGDON, P. J.—This is an action for damages for personal injuries alleged to have been caused by defendant in negligently starting one of its cars after the car had stopped to allow passengers to alight therefrom.

By the verdict of a jury plaintiff was awarded $2,500 damages, and from the judgment rendered thereon the defendant appeals.

Appellant excepts to certain instructions given and to the refusal of the court to give others offered, and also contends that the damages are excessive.

Plaintiff is seventy-three years of age and at the time of the accident was a seamstress, earning $25 to $30 a week. She lived with her married daughter, Mrs. Holman, in Hyde Street, near Clay, in San Francisco. On the afternoon of May 26, 1919, in company with her daughter, she boarded an east-bound Clay Street cable car at Sacramento and Fillmore Streets. The car had an inclosed section in the middle with open portions at each end. A long seat on each side of the open section is reached directly from the street by running-boards. The open sections of the car have wooden uprights to which are attached iron handbars. Plaintiff took a seat on the left rear portion of the open section and her daughter sat beside her. Mrs. Holman, immediately before reaching Hyde Street, tried to attract the attention of the conductor to inform him that she wished to get off the car at Hyde Street, but failed to catch his eye because he was in the front portion of the

car. However, the conductor did give the signal to stop and the car came to a complete stop at Hyde Street to allow some passengers to get on and others to get off the car. After the car stopped, Mrs. Holman stepped off the car on to the ground, and reached up and took hold of plaintiff's right hand to assist her to alight. With her left hand, plaintiff took hold of the rear stanchion and raised herself to her feet. She was in the act of stepping down when the car started. The starting of the car caused plaintiff's body to be swung around from this unstable position so that she faced the rear of the car. Her hand or arm caught between the iron hand-bar and the wooden stanchion, and thus held, she was dragged across Hyde Street, until a jolt of the car loosened her from this position and she fell backward upon the pavement. She was assisted to her residence, which was a short distance from the place where the accident occurred, and was put to bed by her daughter. A physician was called to treat her. For several days she was in a stupor. Her back, head, and right elbow were injured and she was under a physician's care for several weeks and was confined to her bed for over two months.

[1] Since the accident, according to plaintiff's testimony, she has suffered intensely from pain in her back and head, from a sensation of wrenching and pulling on the nerves, has been unable to walk even about a room without staggering or to do any work. She has been unable to sleep well, has lost her appetite, and has given up hope of any permanent recovery. Her physicians attributed her condition at the time of the trial to shock and nervous symptoms due to the accident, and expressed the opinion that she would never be much better. Plaintiff testified that prior to the accident she was in perfect health and had not required the services of a doctor for thirty years.

Under these facts, we think it cannot be said that the damages are excessive. It is not challenged in the record that plaintiff was earning from $25 to $30 a week immediately prior to the accident and had been unable to do any work since. The actual loss of money from her business, at the time of the trial, estimated at $25 a week, amounted to $1,950, to which must be added the nurse's fee of $30 and a physician's bill of $115. Something is allowable

for physical and mental suffering out of the $2,500 judgment.

[2] Three instructions offered by defendant were refused. The gist of two of the instructions so offered is that the carrier is not liable if the passenger does not notify the conductor of her desire to leave the car, nor is it liable if, when the car stops for a reasonable time, the passenger has not previously nor does not then, signify to the conductor her intention of alighting, and the conductor does not actually see her in the act of alighting. In the instant case it appears, without contradiction, that the conductor did give the signal to stop and that the car was at a complete standstill before plaintiff made any attempt to get off the car. [3] The car being at a standstill, Mrs. Holman having alighted safely and remained standing with her hand outstretched to assist the plaintiff, and plaintiff being in the act of stepping down from the car, she had a right to assume that a reasonable time would be given her to alight, and that the conductor, before starting the car, would see that no passenger was in the act of alighting.

In the case of *Hoffman* v. *Pacific Electric Co. et al.*, 45 Cal. App. 751 [188 Pac. 597], it is said: ''It is the law in this state that carriers of passengers upon railways owe to such passengers the highest degree of care, and this degree of care would require of such carriers, especially upon street-cars operated in cities, that whenever such cars come to a stop, whether at regular stopping places or not, if such points of stoppage are such that passengers might properly and conveniently alight, it would become the duty of those in charge of the car to advise themselves that such passengers were not attempting to alight from their said car at such point of stoppage before again starting the car, and a neglect of this duty would render their principal liable. The following authorities fully support this view: *Carr* v. *Eel River etc. R. R. Co.*, 98 Cal. 366 [21 L. R. A. 354, 33 Pac. 213]; *Raub* v. *Los Angeles etc. Ry. Co.*, 103 Cal. 473 [37 Pac. 374]; *West Chicago St. R. R. Co.* v. *Manning*, 170 Ill. 417 [48 N. E. 958].''

It is clear, in the light of the above authorities, that the instructions offered by defendant on this question were improper and were rightly refused. The case of *Dougherty* v. *Union Traction Co.*, 23 Cal. App. 17 [136 Pac. 722], relied

upon by appellant in this connection is not in point here.
It is there stated to be the duty of a passenger "before
attempting to leave a *moving* car or when preparing to do
so, to notify the conductor in some proper manner of their
desire to alight." In that case, the plaintiff *supposed* the
car was going to stop at the next crossing because it had
slackened its speed, and acting upon this supposition, with-
out any warning to the conductor, she moved to a position
of peril and was thrown to the ground by a sudden lurch
of the car.

It is apparent that the facts in the present case clearly
differentiate it from the Dougherty case, *supra,* and bring
it within the rule of the case of *Hoffman* v. *Pacific Elec-
tric Co., supra.*

[4] The other instruction offered by the defendant as-
sumed a fact not in evidence, viz.: That the plaintiff started
to get off the car after the signal was given by the conduc-
tor to go ahead. Plaintiff, her daughter, and four ap-
parently disinterested witnesses testified that plaintiff had
started to get off the car before the conductor gave the
signal to start the car. Nor did the conductor, nor anyone
else, testifying for the defendant, say that the plaintiff
started to alight from the car after the signal had been
given to start. All the conductor said was that "every--
thing was clear" and that he saw no sign whatever of any
other woman than Mrs. Holman rise to get off. There is
nothing in the record to warrant the assertion that plaintiff
started to leave the car after the conductor had given the
signal for the gripman to go ahead.

Appellant contends that because the conductor stated that
he did not see the plaintiff in the act of alighting at the
time he gave the signal to start the car, the jury had a
right to infer that plaintiff started to leave the car after
the signal was given. In the first place, the negation of
the conductor is not coextensive with the statements sought
to be negatived. The clear, positive testimony of several
persons was to the effect that the plaintiff started to leave
the car while it was at a standstill and that the car started
while she was in the act of alighting. The conductor then
testified that he did not see the plaintiff in the act of alight-
ing when he gave the signal to go ahead, *non constat* that
she was not actually in the act of alighting. We are, there-

fore, of the opinion that the record does not show a substantial conflict in the evidence upon this question.

[5] Appellant objects to the giving of the following instruction: "It is the duty of a common carrier, after having stopped its car to enable passengers to alight, to know before starting up the car again whether such passengers in the act of attempting to get off are in a position to be injured by the starting up of the car before such passenger can alight, and it would be negligence to start the car under such circumstances suddenly; and thereby injure the passenger." An instruction substantially the same as this one was given in the case of *Cody* v. *Market St. Ry. Co.*, 148 Cal. 90 [82 Pac. 666], and it was approved by our supreme court. The difference between the instruction there given and the one above quoted is that in the instruction in the instant case, there was added the word "such" before "passengers." Appellant objects to the addition of this word, asserting that in this form the instruction assumes a fact not in evidence; that it does not appear from the record that the conductor stopped the car for the plaintiff (such passenger) to alight, but that he stopped the car for another passenger to alight, and that the insertion of the word "such" gives to the instruction the former implication. We think the instruction is open to the criticism made of it—that it does not precisely cover the facts in evidence, but we are, nevertheless, of the opinion that, under the circumstances, the error is not prejudicial to the defendant. [6] This is because it is our view that it is the duty of the conductor, after having stopped the car to enable a passenger to alight, to know, before starting the car again, not only that the passenger upon whose signal the car was stopped was not in the act of alighting, but also to know that no other passengers who may also have relied upon this signal to stop are in the act of alighting. (*Cody* v. *Market St. Ry. Co.*, supra; *Hoffman* v. *Pacific Elec. Co.*, supra.) Under either set of facts, the instruction was proper, and the latter set of facts unquestionably existed in the present case. Therefore no prejudice could have resulted to the defendant from the instruction given. Errors not affecting the result are harmless and are not cause for reversal. (*San Jose Elec. R. R. Co.* v. *Mayne*, 83

Cal. 566, 569 [23 Pac. 522]; *Pacific Rolling Mill Co.* v. *English,* 118 Cal. 123, 130 [50 Pac. 383].)

[7] Objection is made to an instruction declaring it to be the duty of a carrier of passengers at its stopping places to stop the car a sufficient length of time to enable passengers desiring to do so, to alight therefrom in safety and to hold the car still during that time; that should the carrier start the car while a passenger is on the steps of the car and in the act of alighting, without giving him sufficient time to alight, and without giving notice or warning to the passenger, whereby the passenger is thrown from the car and injured, then the carrier is guilty of negligence. Appellant contends that the instruction is erroneous in this case because it does not appear that plaintiff notified the conductor that she desired to alight from the car. The objection is not good; it is disposed of by the discussion of this question herein in relation to other instructions. The evidence showed that the car had stopped to allow passengers to alight and that plaintiff's daughter had alighted and was assisting plaintiff, who was in the act of alighting when the car started. Under such circumstances, defendant was as much obligated to see that plaintiff was not in the act of alighting as it would have been if plaintiff had been the passenger who had actually given the signal to stop. We are unable to see any difference in the obligation upon the carrier between a case where the passenger who has actually given the signal to stop is in the act of alighting and a case where any one of a number of passengers is in the act of alighting at a stopping place, after the car has stopped upon a signal given by one of their number.

[8] Appellant also objects to the giving of the following instruction: "The carrier of passengers is required to exercise the highest degree of care in their transportation, and is responsible for injuries received by them while in the course of transportation which might have been avoided by ordinary care. Hence, when it is shown that the injury to the passenger was caused by the act of the carrier in operating the instrumentalities employed in its business, there is a presumption of negligence which throws upon the carrier the burden of showing that the injury was sustained without any negligence on its part." A practically identi-

cal instruction was given in the Cody case, *supra*, and was declared by the supreme court to be a proper one. The same rule had been announced previously, in this state, in the case of *McCurrie* v. *Southern Pac. Co.*, 122 Cal. 558, at page 561 thereof [55 Pac. 324]. Under these circumstances, citations of authority from other jurisdictions are not in point here.

[9] The last assignment of error made by the appellant is with reference to an instruction upon the question of damages. The instruction complained of is: "If you should find from the evidence that plaintiff has sustained any injuries because of the negligence of defendant and its employees, and should also find from the evidence that by reason of such injuries, plaintiff has, since receiving the same, and does now, in good faith, suffer from the reasonable apprehension that she will in the future be permanently disabled as the natural and proximate result of such injuries, then I instruct you that such apprehended disability is an element of damages you may take into consideration in arriving at the amount of your verdict."

While this instruction is not entirely unambiguous, we are of the opinion that its fair meaning, and the meaning which it conveyed to the jury, is, that the mental suffering endured by the plaintiff up to the time of the trial, due to her reasonable apprehension of permanent disability (which reasonable apprehension was the proximate result of the accident), was an element to be considered by the jury in arriving at its verdict. As so construed, the instruction was proper under the principle of law announced in the case of *Boa* v. *San Francisco-Oakland Terminal Rys.*, 182 Cal. 93 [187 Pac. 2], where it is said: "Unquestionably, the physical and mental condition of plaintiff resulting from the accident was material, and mental suffering occasioned by reasonable apprehension of future disability or deformity resulting naturally and proximately from her injury was a proper element to be considered by the jury in assessing damages." It was further said that the plaintiff had a right to testify as to her belief at the time of the trial that she would be a permanent invalid. To the same effect are the cases of *Freiburg* v. *Israel*, 45 Cal. App. 138 [187 Pac. 130]; *Ryan* v. *Oakland Gas Co.*, 21 Cal. App. 14, at page 24 et seq. [130 Pac. 693]. It is true that in the Boa

case, *supra,* certain requirements are laid down as to the necessity of a causal connection between the reasonable apprehension causing the mental suffering and the injury. We think the facts shown in the present case fully meet that requirement and, furthermore, the instruction complained of declared to the jury that it could only take into consideration these matters if they were the "natural and proximate result of such injuries."

Appellant contends that this instruction is violative of section 3283 of the Civil Code, and of the well-settled rule that future damages to be recoverable must be certain. The contention is without merit. The rule embodied in this instruction, as we construe it, is in harmony with the rule of the Boa case, *supra,* and with the other cases cited herein upon this question, and as such does not impinge upon the well-settled doctrines invoked by the appellant. Under the instruction, the jury was not permitted to allow damages for any future disability which the plaintiff apprehended; that, of course, could not be done. The jury was merely instructed that it might take into consideration plaintiff's mental suffering up to the time of the trial, which was caused by her reasonable apprehension of being permanently disabled, which apprehension and consequent mental suffering was a direct and proximate result of her injury. This element of damages is no more uncertain and indefinite than in any other case of mental suffering. Mental suffering, like physical suffering, is incapable of exact measurement in dollars and cents, but the jury, nevertheless, may place its estimate upon it. With regard to pain and suffering, the law prescribes no definite measure of damages, but the law leaves such damages to be fixed by the jury, as their discretion dictates and as under all the circumstances may be just and proper. (*Wiley* v. *Young,* 178 Cal. 686 [174 Pac. 316]; *Rystinki* v. *Central California T. Co.,* 175 Cal. 336 [165 Pac. 952].)

We shall consider briefly the authorities cited by the appellant on this question: In the case of *Pouchan* v. *Godeau,* 167 Cal. 692 [140 Pac. 952], the instruction given was objectionable because by it the jury was permitted to allow damages for both present and *future injury* to the character of the plaintiff caused by the slanderous utterances of the defendant. This is quite different from an allowance

for *present and past apprehension* of future disability, which apprehension caused plaintiff mental suffering.

In the case of *Rouse* v. *Pacific Elec. Ry. Co.,* 27 Cal. App. 772 [151 Pac. 164], it was held that a jury may not estimate the pecuniary loss sustained by plaintiff through loss of earning power without any evidence upon that subject whatsoever; that such an estimate would be mere conjecture. This case, clearly, is not in point here.

In the case of *Saylor* v. *Taylor,* 42 Cal. App. 474 [183 Pac. 843], the instruction considered was one which allowed the jury to consider future mental anguish and pain in reaching its verdict. This also presents a different question from the one presented by the instruction in the instant case.

The case of *Melone* v. *Sierra Ry. Co.,* 151 Cal. 113 [91 Pac. 522], lays down the rule that where suffering or mental anguish is endured by the victim, it is recognized as an element of damages in this state. However, it was there held that the jury might not take into consideration the pain and anguish which plaintiff *may suffer in the future.*

The other cases cited by the appellant upon this question are also not in point. They do not involve the element of damages covered by the instruction, as we view it, in the present case. In all of these cases the question involved was either the propriety of a recovery for pain and anguish to be suffered in the future, or for possible future disability apprehended by the person injured. Under our view of the instruction in the present case no such questions are involved.

However, if our interpretation of this instruction be an improper one, and the instruction be open to the objections urged against it by the appellant, nevertheless we are of the opinion that the giving of the instruction would not be reversible error under the facts of this case. As stated before, the actual damages pleaded and proved, without the slightest effort at contradiction, amounted to $1,950 loss of earnings from the date of the injury to the date of the trial; $115 for doctor's services and $30 paid to a nurse—in all $2,095. It appears, then, that there was, approximately, $400 allowed for mental and physical suffering, for plaintiff's nervous and helpless condition, for her loss of sleep and appetite and her loss of capacity to attend

to her household duties or to walk about unaided, and for her loss or impairment of earning power in the future. The trial was had a year and a half after the accident, and the testimony was to the effect that all the conditions above mentioned still existed at that time, and plaintiff's physi-·cians stated that there was little hope of any improvement in her condition. Assuredly, $400 is not an excessive amount of damages for the mental and physical suffering of plaintiff up to the date of the trial. Under these circumstances, in support of the judgment, we must assume that the $400 covered the above-enumerated physical injuries and mental and physical suffering, all of which were proper elements of damages which were allowable. It is, therefore, unnecessary to charge any portion of this sum of $400 either to mental suffering due to apprehension of permanent disability, under our view of the instruction, or to apprehended future disability, under appellant's view of the same. We are, therefore, of the opinion that even though this instruction be erroneous, it was not prejudicial and would not warrant a reversal of this judgment.

Furthermore, the verdict of the jury in this case is a manifestly just one, and no judgment may be set aside on the ground of misdirection of the jury, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. (Sec. 4½, art. VI, Const.)

The judgment is affirmed.

Nourse, J., concurred.

STURTEVANT, J., Dissenting.—I dissent. In my opinion the trial court committed at least two prejudicial errors. It was claimed by the plaintiff that the defendant's car had come to a stop and while the car was so stopped, and while she was in the act of alighting, the car was started with a jerk which caused her injury. These allegations the defendant denied and also pleaded the contributory negligence of the plaintiff. On the trial of the case the plaintiff called the conductor as a witness. He stated that at the time in question he was standing at the back end of the car (which would be immediately behind the plain-

tiff). He also stated that while the car was at a standstill some passengers got off and then, "I see my platform clear and with my left arm I proceeded to go ahead, and seeing everything was clear I walked inside to get the rest of the fares that had boarded the car. . . . She [the plaintiff's daughter] was clear off the car when I saw her. Everything was clear, and I proceeded down to collect one or two fares. . . . At that time I saw no sign whatever of any other lady rise to get off or show any signs of getting off. . . . When I gave the two bells to go ahead I was standing to the rear." When the case stood thus, the trial court instructed the jury as follows: "The carrier of passengers is required to exercise the highest degree of care in their transportation, and is responsible for injuries received by them while in the course of transportation which might have been avoided by ordinary care. Hence, when it is shown that the injury to the passenger was caused by the act of the carrier, in operating the instrumentalities employed in its business, there is a presumption of negligence which throws upon the carrier the burden of showing that the injury was sustained without any negligence on its part." That instruction was highly prejudicial. It violated the rule in *Steele* v. *Pacific Electric Ry. Co.*, 168 Cal. 375 [143 Pac. 718]. Furthermore, the instruction states "there is a presumption of negligence." If there is, it must somewhere be printed in the statutes. (Code Civ. Proc., sec. 1959.) But one will search the statutes in vain to find any such provision printed therein.

It is patent from the record that conceding that an accident had occurred, and conceding that the plaintiff had been injured, and conceding that the injury occurred through the fault of the defendant, still it was the theory of the defense that the plaintiff's injury was slight; that she had wholly recovered, and that her claim for damages was excessive. When the parties stood before the court making these conflicting contentions, the court instructed the jury as follows: "If you should find from the evidence that plaintiff has sustained any injuries because of the negligence of defendant and its employees, and should also find from the evidence that by reason of such injuries, plaintiff has, since receiving the same, and does now, in good faith, suffer from the reasonable apprehension that she

will in the future be permanently disabled as the natural and proximate result of such injuries, then I instruct you that such apprehended disability is an element of damages you may take into consideration in arriving at the amount of your verdict." The instruction was clearly erroneous and in direct conflict with the rule as stated in *Pouchan* v. *Godeau*, 167 Cal. 692, 695 [140 Pac. 952]. It cannot be ascertained from the record whether the jury made and based its award on the claimed "apprehension" as to the future, or based its award on what had occurred down to the date of the trial.

I think the case should be reversed and remanded for a new trial.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 29, 1921.

All the Justices concurred.

Lawlor, J., was absent, and Richards, J., *pro tem.*, was acting.