[Civ. No. 4825. First Appellate District, Division Two.—August 30, 1924.]

LESTER LAWRENCE, Respondent, v. PICKWICK STAGES, NORTHERN DIVISION, INC., Appellant.

[1] NEGLIGENCE — INJURY TO AUTOMOBILE STAGE PASSENGER — RES IPSA LOQUITUR—PLEADING.—In an action for damages for personal injuries suffered by plaintiff while a passenger upon an automobile stage operated by defendant, a complaint alleging the ownership and operation of the stage line, that on a certain day plaintiff was a passenger upon one of defendant's stages traveling in a stated direction, that at a certain place en route the agent and servant of defendant in charge of said stage "so carelessly and negligently operated said bus thereby causing said bus to leave the highway and turn into a ditch with great force and violence," thereby inflicting upon plaintiff severe and serious personal injuries enumerated in the complaint, states a cause of action; and such complaint sufficiently alleges the causal connection between the negligence of defendant and plaintiff's injury.

[2] ID.—RES IPSA LOQUITUR—PRESUMPTION—ERRONEOUS INSTRUCTION. In such action, an instruction to the effect that if the jury

————

1. Application of doctrine of *res ipsa loquitur* to automobile accidents, notes, 5 A. L. R. 1240; 12 A. L. R. 668. See, also, 3 Cal. Jur. 955, 964; 20 R. C. L. 184.

2. See 19 Cal. Jur. 707, 762; 20 R. C. L. 184.

found that while plaintiff was being carried as a passenger by defendant, the automobile in which plaintiff was riding left the highway and went into a gulch and was wrecked and plaintiff was injured solely by reason thereof and through no fault of his own, a presumption of negligence arises, throwing the burden upon defendant of showing that the injury was sustained without negligence upon its part, is open to the criticism that no such presumption exists in this state—the rule being that the jury might infer negligence but is not bound to presume it from the facts recited; but the giving of such instruction will not be held reversible error where it clearly and unmistakably appears that plaintiff was injured through the negligence of defendant's agent.

[3] Id.—Burden of Proof—Instructions.—In such action, failure to include in the instruction embodying the doctrine of *res ipsa loquitur* a statement that the burden of proving negligence by a preponderance of the evidence rests with plaintiff, is not error where that phase of the law is fully covered by separate instructions.

[4] Id.—Unavoidable Accident—Issues—Evidence—Instructions.—In such action, defendant having introduced some evidence in support of its defense that the injury to plaintiff was caused by an unavoidable accident, and the court having instructed the jury that carriers of passengers are not insurers of the passengers who travel with them, "but are only held to the highest degree of care in the management and operation of their equipment, and if they have fulfilled that duty and some outside instrumentality shall intervene, over which they have no control, such as an act of God, and an accident results therefrom, they would not be liable," and that when carriers of passengers have exercised "the highest degree of care and caution in the purchase of equipment and the operation of their vehicles . . . then if from some outside cause not under their control and not avoidable by the highest degree of care and caution . . . an accident happens, the carrier would be absolved from liability," it was not error to refuse to give other instructions requested by defendant and which related to its special defense of unavoidable accident.

[5] Id.—Definitive Instructions.—In such action, while the trial court might well have given further instruction defining the terms "unavoidable accident," and "act of God" and "outside cause," the refusal of the court to give such definite instructions would not justify a reversal of the judgment.

3.  See 14 R. C. L. 751.
4.  See 14 R. C. L. 798.
5.  See 14 R. C. L. 761.

[6] ID. — X-RAY EXAMINATION — INDEMNIFYING BOND — CONSENT OF PLAINTIFF.—In such action, the trial court, at the request of defendant, having ordered a physical examination of plaintiff, but declined to make an order requiring plaintiff to submit to an X-ray examination without his consent upon the ground that there was always a possibility of injury in connection with the taking of X-ray plates, and the plaintiff having refused to give his consent to such X-ray examination unless he should be given a bond indemnifying him against injuries that might possibly result to him from the taking of the pictures, and defendant having refused to comply with such demand, the trial court did not err, in not ordering an X-ray examination of plaintiff.

[7] ID.—EFFECT OF INJURIES—IMPROVEMENT FOLLOWING JUDGMENT—NEWLY DISCOVERED EVIDENCE—NEW TRIAL.—In such action, plaintiff having testified at the trial that the motion of his left arm was restricted and considerably less than normal because of his injury, and defendant, in support of its motion for a new trial on the ground of newly discovered evidence, having submitted affidavits and photographs showing that within a short time after the entry of judgment plaintiff was seen swimming and engaging in other forms of exercise and apparently enjoying full use of his arms and shoulders, but plaintiff having submitted counter-affidavits to the effect that he was exercising his arm and shoulder, pursuant to his doctor's instructions, in order to improve the mobility of his arm and shoulder, and that the condition of his arm and shoulder had greatly improved under such course of treatment—which was in accordance with testimony at the trial to the effect that the motion of the arm would probably increase in time with exercise and care—the trial court did not commit an abuse of discretion in denying the motion for a new trial.

[8] ID.—ACTUAL DAMAGE—JUDGMENT—REDUCTION OF VERDICT.—In such action, the usual wages of plaintiff for the time he testified he had been unable to work by reason of his injury, plus the expenses incurred for doctor and hospital bills, having amounted to more than the verdict, a permanent cure subsequent to the entry of judgment would not entitle defendant to a reduction in the verdict.

(1) 10 **C. J.**, p. 998, sec. 1407, p. 1010, sec. 1414.    (2) 4 **C. J.**, p. 1029, sec. 3013, p. 1041, sec. 3026; 10 **C. J.**, p. 1029, sec. 1428. (3) 10 **C. J.**, p. 1086, sec. 1474; 38 **Cyc.**, p. 1785.    (4) 10 **C. J.**, p. 1087, sec. 1475.    (5) 4 **C. J.**, p. 1048, sec. 3031; 38 **Cyc.**, p. 1686. (6) 17 **C. J.**, p. 1055, sec. 357.    (7) 4 **C. J.**, p. 835, sec. 2817; 29 **Cyc.**, pp. 904, 1009.    (8) 29 **Cyc.**, p. 904.

6. Power to compel plaintiff to submit to X-ray examination, note, **L. R. A.** 1915E, 938.  See, also, 14 **Cal. Jur.** 403; 14 **R. C. L.** 696, 708.

8. Measure of recovery for personal injuries, note, **Ann. Cas.** 1913A, 1361.  See, also, 8 **Cal. Jur.** 808; 8 **R. C. L.** 465.

APPEAL from a judgment of the Superior Court of Monterey County and from an order denying a new trial. J. A. Bardin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Theodore Hale, Barry J. Colding, A. E. Warth and B. P. Gibbs for Appellant.

Reisner & Honey for Respondent.

LANGDON, P. J.—This is an appeal by the defendant Pickwick Stages from a judgment against it in an action for damages for personal injuries sustained by plaintiff while he was a passenger upon an automobile bus operated by defendant, which injuries were alleged to have been caused proximately by the negligence of the driver of the automobile.

[1] The complaint alleged that the defendant, at all times mentioned therein, was the owner and operator of certain automobile busses running regularly between the cities of San Francisco and Los Angeles; that on July 20, 1922, the plaintiff was a passenger upon one of said busses being operated by the defendants in a northerly direction on the highway between Los Angeles and San Francisco; that about eight miles south of the town of San Ardo, county of Monterey, state of California, the agent and servant of the defendant in charge of said stage "so carelessly and negligently operated said bus thereby causing said bus to leave the highway and turn into a ditch with great force and violence," thereby inflicting upon plaintiff severe and serious personal injuries enumerated in the complaint.

Appellant contends that the complaint fails to state a cause of action because the foregoing allegations do not sufficiently allege negligence of the defendants, and that the demurrer should have been sustained. Appellant asserts that the allegation that the bus was negligently operated upon the highway and thereby was caused to leave the highway and turn into a ditch with great force and violence raises no inference that the act of causing the automobile to turn into a ditch with great force and

68 Cal. App.—32

violence was negligent. · It is well settled that the derailment of a vehicle raises an inference of negligence under the doctrine of *res ipsa loquitur* (4 Cal. Jur., sec. 119, p. 980; *Mitchell* v. *Southern Pac. Co.*, 87 Cal. 62, 72 [11 L. R. A. 130, 25 Pac. 245]), and such a situation is closely analogous to a situation where an automobile leaves the highway and turns into a ditch.

It is further asserted by appellant that there is no sufficient allegation of causal connection between the negligence of defendant and plaintiff's injuries. We see no force in this objection. The complaint alleged that the act of turning into the ditch with great force and violence caused the injury to plaintiff and we think the allegation was sufficient.

[2]    It is contended that error was committed by the court in giving an instruction to the jury to the effect that if it found that while the plaintiff was being carried as a passenger by the defendant, the automobile in which he was riding left the highway and went into a gulch and was wrecked and the plaintiff was injured solely by reason thereof and through no fault of his own, a presumption of negligence arises, throwing the burden upon the defendant of showng that the injury was sustained without negligence upon its part. It is argued that no such presumption exists in this state and that the rule is that the jury might infer negligence but is not bound to presume it from the facts recited. While we must concede to counsel that the instruction is open to the criticism arising from this distinction ably made in appellant's brief, nevertheless, under all the facts of this case, the giving of the instruction does not warrant this court in reversing the judgment, where it clearly and unmistakably appears that the plaintiff was injured through the negligence of defendant's agent. Instructions subject to the same attack have been reviewed by this court and by the supreme court upon petitions for hearing in that court in the cases of *Jones* v. *United R. R.*, 54 Cal. App. 744 [202 Pac. 919], and *Zerbe* v. *United R. R.*, 56 Cal. App. 583 [205 Pac. 887], wherein it was held that such an instruction did not warrant a reversal of the judgment.

[3]    Appellant also complains that in the instruction given to the jury embodying the doctrine of *res ipsa*

*loquitur* there was not included a statement that the burden
of proving negligence by a preponderance of the evidence
rested with the plaintiff. We do not think it was necessary
to repeat in the instruction complained of the rule regard-
ing burden of proof. The jury was instructed generally
that the burden of proof of all affirmative allegations
rested upon the plaintiff; also upon the meaning of
"preponderance of evidence," and further, that "in actions
of this nature the burden of proof is on the plaintiff to
establish all the material allegations of his or her com-
plaint by a preponderance of the evidence and if upon a
consideration of the whole case you find that the plain-
tiff has failed to do this, or that the evidence balances
equally, your verdict must be for the defendant."

[4] The third point made upon the appeal is that error
was committed in the refusal of the trial court to give cer-
tain instructions requested by the defendant. These in-
structions related to the defense that the injury of the
plaintiff. was caused by an unavoidable accident. Defend-
ant offered in support of this theory the testimony of the
driver of the automobile who stated that he did not know
how the automobile went off the highway into the ditch.
He stated that after he left Santa Barbara he had a head-
ache, for which he took aspirin; that after leaving San
Luis Obispo "I was feeling fine and from the heat of the
motor I should judge, and vibrations, why, after I pulled
the grade I began to feel drowsy and my head bothered
me a little and I stopped again at San Miguel." He then
stated that from that time to the time of the accident
he had no trouble with the operation of the automobile;
that upon reaching the place of the accident, he was driv-
ing on the extreme right-hand side of the road with the
wheels of the automobile six inches from the concrete or
paved portion of the highway. He explains the accident
in this manner: "Well, as I rounded the turn, I should
judge by the diagram about two hundred and twenty-
five or thirty feet from the scene where the car stopped,
as I straightened up the car the next thing I remember I
felt the wheel drag to the right just about that quick
[indicating] the car was headed into the gulch. Q. Now,
Mr. Brashear, do you know at about what speed you were
traveling when you rounded that curve you just testified

to? A. About twenty-eight miles an hour, as near as I could judge. Q. Was there anything whatever at that time that you know of wrong with the operation of the stage, that is wrong with the stage? A. No, sir. Q. Did you have any trouble operating it? A. No, sir. Q. Do you, of your own knowledge, now know what caused that stage to leave the highway? A. I do not." He stated, further, that from the time he left Los Angeles he made no report to any officer of the defendant company that he was unable to drive the stage; that he was thoroughly familiar with every foot of the highway and had been driving over it for years.

If the testimony above recited permits of the inference that the automobile went into the ditch as an unavoidable accident or for any reason other than that the driver rounded a curve at too great a rate of speed and while he was grossly inattentive to the business of driving, then the rights of the defendant were protected by the following instruction given to the jury: "You are instructed that while you have been advised in these instructions that the defendant, Pickwick Stages, Northern Division, Inc., as a carrier of passengers, was required, under the law, to exercise the highest degree of care in the operation of its passenger vehicles, yet in that connection I charge you that passenger carriers are not to be considered in law as the insurers of the safety of the passengers who travel with them, but are only held to the highest degree of care in the management and operation of their equipment, and if they have fulfilled that duty and some outside instrumentality shall intervene, over which they have no control, such as an act of God, and an accident results therefrom, they would not be liable." The jury was also instructed: "Transportation companies are not, as a matter of law, insurers of the safety of their passengers. The law requires of them the highest degree of care and caution in the purchase of equipment and the operation of their vehicles. However, when they have fulfilled these burdens, then if from some outside cause not under their control and not avoidable by the exercise of the highest degree of care and caution about which you have been instructed, an accident happens, the carrier would be absolved from liability."

[5]   But appellant contends that because the court refused instructions defining "unavoidable accident" and "act of God", and "outside cause," the foregoing instructions were meaningless. We do not agree with the appellant in this contention. While the definitive instructions refused might well have been given, nevertheless, this court would not be justified in reversing the judgment because of their absence upon the theory that the jury did not understand such simple usual expressions which are a part of the vocabulary of every layman and were used in the instructions in their usual and well-understood sense.

[6]   It is urged that the trial court erred in not ordering an X-ray examination of the plaintiff. Defendant asked the court to appoint a disinterested physician at the expense of defendant for the purpose of making a physical and X-ray examination of plaintiff. The court ordered the physical examination, but declined to make an order requiring plaintiff to submit to an X-ray examination without his consent upon the ground that there was always a possibility of injury in connection with the taking of X-ray plates. Plaintiff refused to give his consent to an X-ray examination unless he should be given a bond indemnifying him against injuries that might possibly result to him from the taking of the pictures. Since appellant contends that such an examination was important to its case and since the plaintiff was willing to submit to the same upon being indemnified against injury, there seems no good reason why the defendant should not have so indemnified him. The evidence was required by the defendant; if it involved any cost in money to secure it, that was a proper charge against defendant, and if it involved any cost in physical injury to plaintiff, that was, equally, a matter for which the defendant should pay.

[7]   The last point urged by appellant is that the court erred in denying defendant's motion for a new trial upon the ground of newly discovered evidence. The facts pertinent to this motion are that the plaintiff had testified at the trial that the motion of his left arm was restricted and considerably less than normal because of his injury. He had sustained a multiple fracture of the left shoulder and contusion about the left shoulder as a result of the accident and at the trial physicians testified to the fact

that the movement of the shoulder was impaired to a certain extent; that he could not move his arm backward to the center of his back and could not move it forward or upward as freely as he could move the right arm. It was also in evidence that this condition probably would improve in time if the arm was exercised properly. A judgment against the defendant in the sum of two thousand dollars was entered on March 27, 1923. The affidavits supporting the motion for a new trial stated that upon April 7, 1923, the plaintiff had been seen upon the beach at Venice, California, where he was turning handsprings and "cart-wheels" and that upon the same day the affiant observed said plaintiff in the swimming pool at Venice and saw him "dive from the spring-board with his arms extended over his head and that when Lester Lawrence came to the surface of the water after diving he began swimming across the swimming pool with the stroke which is professionally known as the 'Australian Crawl'; that affiant observed Lester Lawrence swimming with practically every stroke known to swimmers and doing what is known as the 'Seal Dive'; that at no time did Lester Lawrence appear to experience any difficulty or pain whatever in using his arms while in swimming or while on the beach." Attached to the various affidavits supporting the motion are photographs taken of plaintiff upon this occasion at the beach in which are represented several persons, including plaintiff, in various groupings, in almost all of which plaintiff appears to be using both his arms very freely.

In opposition to this showing the plaintiff filed counter-affidavits. In one of these he stated that upon the trial of the action he had heard the physicians called as witnesses testify to the effect that the motion of his arm would improve if the arm were properly exercised and that he had been advised, personally, to the same effect by a physician; that he had been advised that regardless of pain in the shoulder, certain manipulation and exercise would be beneficial and accordingly he had started in upon March 27, 1923, taking a regular course of swimming for the sole and exclusive purpose of using his shoulder and exercising the same; that after March 27, 1923, he swam several times a week and exercised regardless of

the pain caused thereby; that in addition to the swimming
exercises, he secured the advice and services of an ath-
lete who had had a large experience in training persons
for athletic contests, and that on March 27, 1923, and con-
tinuing until after April 7, 1923, said person administered
daily treatments to plaintiff consisting of massaging,
manipulating, flexing, and exercising plaintiff's shoulder
and arm; that as a result of this varied exercise, plaintiff
greatly increased the mobility of his arm and shoulder,
which accounts for the fact that he was able to as-
sume the positions shown in the pictures attached to de-
fendant's affidavits. Plaintiff also presented to the court
an affidavit of Joseph Swift, who had administered these
daily treatments, which corroborated the plaintiff in his
statements.

Under these circumstances, we do not think there was
an abuse of discretion in denying the motion for a new
trial. The testimony at the trial was to the effect that
the motion of the arm would probably increase in time
with exercise and care and the jury must have based its
verdict upon this situation. The length of time required
to effect a substantial improvement is a matter which,
necessarily, could not be accurately determined in advance.
The counter-affidavits explained the condition set forth in
the affidavits in support of the motion and the trial judge
exercised his discretion in a reasonable manner upon a
matter which, under the circumstances, is not subject to
review.

[8] Furthermore, it appears from the record that the
verdict was not excessive, even though nothing were to be
allowed for the incapacity of the plaintiff after the date
of the trial. The plaintiff was an electrical engineer with
a large experience and his usual wages for the time he
testified he had been unable to work by reason of his in-
jury, plus the expenses he incurred for doctor and hos-
pital bills, amounted to more than the verdict and, there-
fore, a subsequent permanent cure would not entitle the
defendant to a reduction in the verdict.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.