[Civ. No. 23427. Third Dist. Mar. 28, 1985.]

BRUCE L. POWELL et al., Plaintiffs and Appellants, v.
STANDARD BRANDS PAINT COMPANY, Defendant and Respondent.

COUNSEL

Friedman, Collard & Poswall and Allan J. Owen for Plaintiffs and Appellants.

Curotto Law Offices and William E. Barnes for Defendant and Respondent.

OPINION

SIMS, J.—Plaintiffs Bruce Powell and Dale Mereness appeal from a summary judgment granted in favor of defendant Standard Brands Paint Company (Standard Brands) in an action for personal injuries. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

As relevant to this appeal, the complaint prepared by plaintiffs' attorneys stated that defendant Standard Brands and other defendants were the suppliers or manufacturers "of certain equipment and cleaning solvents, specifically being, but not limited to a buffer and/or thinner referred to herein." The complaint further alleged that Standard Brands and other defendants "negligently and carelessly operated, controlled, warned, supplied, maintained, managed, designed, manufactured, or modified said buffer and/or thinner which proximately caused the injuries and damages to plaintiff as herein described." Paragraph X of the complaint pleaded in pertinent part, "That on or about June 10, 1982, . . . *while plaintiff was stripping a tile floor with said* buffer and *thinner,* an explosion occurred due to the negligence of the defendants, and each of them, proximately causing the hereinafter described injuries and damages to plaintiff." (Italics added.)

As relevant here, plaintiff sought recovery for damages on theories of negligence and strict liability.

In moving for summary judgment, Standard Brands competently showed that plaintiffs commenced work on June 9, 1982, using lacquer thinner supplied by Standard Brands to remove sealer from ceramic tile. They worked without incident throughout the evening until they had used up the Standard Brands lacquer thinner. However, plaintiffs were unable to finish the job on June 9. The following day, June 10, plaintiffs' employer ordered two five-gallon containers of lacquer thinner from codefendant Harris Automotive (Harris). This lacquer thinner was manufactured by codefendant Grow Chemical Coatings Company (Grow).[1] Working in an area approximately 25-50 feet from where they had worked the previous evening, plaintiffs commenced pouring the Grow lacquer thinner on the tile floor and buffing the thinner with the electric buffer. During this operation an explosion occurred, seriously injuring both plaintiffs and giving rise to the instant lawsuit.

Plaintiffs relied primarily on the declaration of plaintiff Powell.[2] Powell declared that the lacquer thinner purchased from Standard Brands contained neither warnings nor safety instructions and that "Had anyone at STANDARD BRANDS advised us of the dangerous nature of lacquer thinner or of its highly flammable characteristics, I would not have used it on the job and would not have been using it at the time of my injury."

The trial court granted the motion and plaintiffs appeal from the summary judgment entered in favor of Standard Brands.

## DISCUSSION

The purpose of a motion for summary judgment is to determine if there are any triable issues of material fact, or whether the moving party is

---

[1] The declarations submitted on the motion for summary judgment do not indicate whether the Grow thinner contained warnings. Defendant asks us to take judicial notice of evidentiary materials submitted by codefendant Harris in the trial court in connection with a motion for summary judgment heard after this case was on appeal. Since the materials were not before the trial court when it ruled on Standard Brands' motion, the request for judicial notice is denied. Plaintiffs' complaint alleged that defendants Grow and Harris wrongfully failed to warn of risks of their product. The burden was on defendant Standard Brands to refute those pleaded allegations by competent evidence. (See *Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 639 [177 Cal.Rptr. 445].) It did not do so. For present purposes, we must assume the unchallenged allegations of the complaint control and that the Grow lacquer thinner contained inadequate warnings.

[2] Plaintiffs' attorneys filed an inordinately truncated response to the motion for summary judgment. Their two and one-half page memorandum of points and authorities cited only one case—*Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061]—on the question of applicable tort duties.

entitled to judgment as a matter of law. (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].) ■ Because summary judgment is a drastic procedure all doubts should be resolved in favor of the party opposing the motion. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 183 [203 Cal.Rptr. 626, 681 P.2d 893].) However, where, as here, the facts are not in dispute, summary judgment is properly granted when dispositive issues of law are determined in favor of the moving party. (*Allis-Chalmers Corp.* v. *City of Oxnard* (1981) 126 Cal.App.3d 814, 818 [179 Cal.Rptr. 159]; see *Miller* v. *Bechtel Corp., supra,* 33 Cal.3d at p. 876.)

■ As best we understand it, plaintiffs assert on appeal that Standard Brands owed them a duty to warn them of the dangerous properties of its lacquer thinner, that it breached its duty to warn, and that its failure to warn was a legal proximate cause of the injuries suffered by plaintiffs. To our knowledge, no reported decision has held a manufacturer liable for its failure to warn of risks of using its product, where it is shown that the immediate efficient cause of injury is a product manufactured by someone else. Unfortunately, in addressing the merits of plaintiffs' important and novel contention, we find the meagre brief filed by plaintiffs' attorneys of little assistance.[3] Needless to say, however, we believe our own research has produced a correct result.

■ ■ The premise of plaintiffs' argument is clearly correct; a manufacturer owes a foreseeable user of its product a duty to warn of risks of using the product. (See, e.g., *Finn* v. *G. D. Searle & Co.* (1984) 35 Cal.3d 691, 699 [200 Cal.Rptr. 870, 677 P.2d 1147]; *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 428 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1]; *Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 347 [157 Cal.Rptr. 142]; *Burke* v. *Almaden Vineyards, Inc.* (1978) 86 Cal.App.3d 768, 772 [150 Cal.Rptr. 419]; *Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 244-245 [71 Cal.Rptr. 306]; *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 54-55 [46 Cal.Rptr. 552] [all decided upon principles of strict liability]; see also *McEvoy* v. *American Pool Corp.* (1948) 32 Cal.2d 295 [195 P.2d 783]; *Tingey* v. *E. F. Houghton & Co.* (1947) 30 Cal.2d 97, 103 [179 P.2d 807]; *Larramendy* v. *Myres* (1954) 126 Cal.App.2d 636, 640 [272 P.2d 824]; *Gall* v. *Union Ice Com-*

---

[3]The brief simply incorporates the reference to *Sindell* v. *Abbott Laboratories, supra,* from the opposition to the summary judgment motion (see fn. 2, *ante*) and cites two additional cases.

*pany* (1951) 108 Cal.App.2d 303, 310 [239 P.2d 48] [all decided upon principles of negligence].)[4]

■ Standard Brands has not refuted plaintiffs' pleaded assertions that said defendant owed plaintiffs a duty to warn of risks of *its* product and that it breached its duty. However, the evidence is undisputed that the immediate efficient cause of plaintiffs' injuries was the explosion of a product manufactured not by Standard Brands but rather by Grow. The question posed is whether Standard Brands' failure to warn was a legal proximate cause of plaintiffs' injuries. We conclude, in the circumstances of this case, it was not.

■ As a general rule, the imposition of liability in tort for personal injuries depends upon a showing by the plaintiff that his or her injuries were caused by the act of the defendant or by an instrumentality under the defendant's control. (*Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d at p. 597.) ■ "Proximate cause is a necessary element of both negligence and strict products liability actions. [Citations.]" (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 54, fn. 4 [192 Cal.Rptr. 857, 665 P.2d 947].)

In *Bigbee* v. *Pacific Tel. & Tel. Co., supra,* our Supreme Court characterized the questions of duty and proximate cause as presenting "the same issue in different guises." (34 Cal.3d at p. 56.) Each construct, said the court, involves the question wether the risk of injury to the plaintiff was reasonably foreseeable. (*Ibid.*) The court stated that ordinarily foreseeability is a question of fact for the jury. (*Ibid.*) ■ However, the question of reasonable foreseeability may be decided as a question of law if, under the undisputed facts, there is no room for a reasonable difference of opinion. (*Ibid.*; see, e.g., *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 66 [271 P.2d 23] (opn. by Traynor, J.) [as a matter of law, defendant who left keys in car had no reason to believe that a car thief would be an incompetent driver]; compare *Palma* v. *U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d at pp. 183-186.)

---

[4]Section 388 of both the Restatement First and Second of Torts states: "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

■ Where a defendant has committed a wrongful act, and where a third person also commits a later wrongful act, and both are alleged to have caused plaintiff's injuries, the courts have asked whether the subsequent act of the third party was a superseding cause that served to break the requisite chain of causation between defendant's wrongful act and the injury. (See, e.g., *Stultz* v. *Benson Lumber Co.* (1936) 6 Cal.2d 688, 693 [59 P.2d 100] [negligence of assembler of scaffold using defective board without inspection was superseding cause exonerating manufacturer of defective board from liability].) Whether the act of the third person is a superseding cause depends in part on whether it (and plaintiff's injury) was reasonably foreseeable.[5]

■ On the undisputed facts tendered in this case, we conclude the explosion of Grow's product, and plaintiffs' consequent injuries, were not reasonably foreseeable consequences of Standard Brands' failure to warn as a matter of law. We explain.

■ ■ ■ Although there appears to be some uncertainty about the knowledge required of a manufacturer to justify liability for failure to warn of *its* product (see *Finn* v. *G. D. Searle & Co., supra,* 35 Cal.3d at p. 699), it is clear the manufacturer's duty is restricted to warnings based on the characteristics of *the manufacturer's own product.* (See, e.g., *Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d at p. 611; *Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 129 [104 Cal.Rptr. 433, 501 P.2d 1153]; *Blackwell* v. *Phelps Dodge Corp.* (1984) 157 Cal.App.3d 372, 377 [203 Cal.Rptr. 706]; *Garman* v. *Magic Chef, Inc.* (1981) 117 Cal.App.3d 634, 638 [173 Cal.Rptr. 20].) Understandably, the law does not require a manufacturer to study and analyze the products of others and to warn users of risks of those products. A manufacturer's decision to supply warnings, and the nature of any warnings, are therefore necessarily based upon and tailored to the risks of use of the manufacturer's own product. Thus, even where the manufacturer erroneously omits warnings, the most the manufacturer could reasonably foresee is that consumers might be subject to the risks of the manufacturer's own product, since those are the only risks he is required to know.

From the foregoing, it follows that if plaintiff's theory of liability (asserted on appeal) has any validity, it would be limited to situations where the risks of use of the product immediately causing injury are identical to the risks of use of the product previously used with inadequate warnings.

---

[5]Section 442A of the Restatement Second of Torts provides: "Where the negligent conduct of the actor creates or increases the *foreseeable risk of harm* through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superceding cause." (Italics added.)

No other risks are reasonably foreseeable. As a practical matter, a contrary conclusion would require each manufacturer to ascertain the risks of products manufactured by others within an industry and to warn of the highest risks a consumer might encounter. Such a requirement would place on each manufacturer an untoward duty and would penalize inventive manufacturers whose products are, in fact, of lower risk than other products in the industry.

■■■ We therefore believe the theory of liability now asserted by plaintiffs would require at a minimum that: (a) the product immediately causing injury (product B) was subject to the same generic description as the product previously used with inadequate warnings (product A), e.g., "lawnmower," "electric drill," "aspirin," etc.; (b) product B was generally used for the same purposes as product A by consumers; (c) product B's warnings were inadequate; and (d) *product B had risks of use identical to those of product A.* This theory of liability gains credence to the extent a generically identical product (with presumably identical risks of use) is made by a limited number of manufacturers in an industry, and there is an industry-wide practice of omitting warnings on the product. (See, e.g., *Hall* v. *E. I. Du Pont de Nemours & Co., Inc.* (E.D.N.Y. 1972) 345 F.Supp. 353, see also *Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d at pp. 607-610.) In such a situation, each manufacturer has reason to know that the risks of use associated with its product are the same as the risks of the other products and that a consumer will receive no adequate warnings from the other products.[6]

In this case we need not decide whether a manufacturer who fails to warn of its product may be held liable for injuries immediately caused by the use of a product with the same generic description and identical risks of use, because it is clear plaintiffs' attorneys never pleaded facts necessary to support that legal theory, nor anything remotely resembling it, in the trial court. (See *Finn* v. *G. D. Searle & Co., supra,* 35 Cal.3d at p. 699; *Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d at p. 605.) ■■ "On motion for summary judgment the pleadings define the issues; thus ' "[I]n the absence of some request for amendment there is no occasion to inquire about possible issues not raised by the pleadings." ' (*Krupp* v. *Mullen* (1953) 120 Cal.App.2d 53, 57 [260 P.2d 629]; *Gardenswartz* v. *Equitable etc. Soc.* (1937) 23 Cal.App.2d Supp. 745, 752 [68 P.2d 322]; see *Dawson* v. *Rash* (1958) 160 Cal.App.2d 154, 161 [324 P.2d 959].)" (*Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848, 885 [164 Cal.Rptr. 510, 610 P.2d

---

[6]This would seem to be particularly so where there is little brand-name loyalty by consumers using the products, so any given manufacturer could expect consumers to use generically identical products made by others in one industry.

407].) We have recently remarked, "The law and facts of a case bear a chicken and egg relationship. The law identifies the *kinds* of facts which are material to the case. The facts delimit the applicable propositions of law. [Citations.] Properly drafted pleadings display this recursive relationship. *The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute.*" (*Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600, 604-605 [208 Cal.Rptr. 899], fn. omitted, italics added.)

 The complaint prepared by plaintiffs' attorneys did not plead that Standard Brands' absence of warnings caused plaintiffs to use a generically identical product, nor a product with the same risks of use, nor even a substantially similar product, without knowledge of its dangers. Indeed, the complaint pleads no relationship of similarity whatsoever between the Standard Brands and the Grow products. Rather, the complaint prepared by plaintiffs' attorneys states plaintiffs were using Standard Brands' product when an explosion occurred. The complaint tendered a theory that the Standard Brands product was the immediate efficient cause of injury, i.e., plaintiffs were using it when it exploded. That pleading was the one defendant had to encounter on its motion for summary judgment. (*Metromedia, Inc.* v. *City of San Diego, supra,* 26 Cal.3d at p. 885.) Standard Brands showed, contrary to plaintiffs' pleading, plaintiffs were not using its product at the time of the explosion. Standard Brands therefore refuted the only theory of causation pleaded by plaintiffs' attorneys. There was no other viable theory of causation pleaded,[7] and the trial court had no duty to invent one. "Neither a trial court nor a reviewing court in a civil action is obligated to seek out theories plaintiff might have advanced, or to articulate for him that which he has left unspoken." (*Finn* v. *G. D. Searle & Co., supra,* 35 Cal.3d at pp. 701-702.)

We conclude, on the facts pleaded and adjudicated on the motion for summary judgment, it was not reasonably foreseeable as a matter of law that Standard Brands' failure to warn of risks of its product would cause plaintiffs to suffer injuries while using the product of another. (See *Richards* v. *Stanley, supra,* 43 Cal.2d at p. 66.) In the circumstances, the explosion

---

[7]Nor did plaintiffs' attorneys seek leave to amend their complaint. Nor was evidence presented on the motion for summary judgment indicating the Standard Brands and Grow products were generically identical or had the same risks of use. Indeed, the only evidence on the question before the court was contained in the deposition testimony of Gary Fischer, who worked with plaintiffs and actually purchased the Grow lacquer thinner for their use. Fischer testified he had heard after the accident that the Grow lacquer thinner "was an extremely flammable lacquer thinner." The record presents no basis upon which an appropriate amendment of the complaint may be implied. (Compare *Davis* v. *Cordova Recreation & Park Dist.* (1972) 24 Cal.App.3d 789, 794 [101 Cal.Rptr. 358].)

of Grow's product was an intervening and superceding cause of injury to plaintiffs. Consequently, Standard Brands' failure to warn was not a proximate cause of plaintiffs' injuries as a matter of law. (See *Stultz* v. *Benson Lumber Co., supra,* 6 Cal.2d at p. 693.) Standard Brands' motion for summary judgment was properly granted.[8]

DISPOSITION

The judgment is affirmed.

Regan, Acting P. J., and Carr, J., concurred.

---

[8]We note in passing that *Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d 588, does not aid plaintiffs. There, the product (the drug DES) was "produced from an identical formula." (P. 593.) Moreover, the case does not stand for the proposition that the manufacturer of product A is liable where the immediate efficient cause of a plaintiff's injury is product B. The case merely shifted the burden of proof to defendants "to demonstrate that they could not have made the substance which injured plaintiff . . . ." (P. 612.) Here, in our view, Standard Brands has met its burden.