**FEDERAL DEPOSIT INSURANCE COR-PORATION, Plaintiff–Appellant, and Cross–Appellee,**

v.

**IMPERIAL BANK, Defendant–Appellee, and Cross–Appellant.**

**Nos. 87–6634, 87–6701.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1988.

Decided Oct. 4, 1988.

**102**

E. Whitney Drake, Sp. Counsel, Federal Deposit Ins. Corp., Washington, D.C. and Marshall G. Mintz, Troy Casden Gould, Los Angeles, Cal., for plaintiff-appellant, and cross-appellee.

Larry W. Gabriel, Carol L. Newman, Rosen, Wachtell & Gilbert, Los Angeles, Cal., for defendant-appellee, and cross-appellant.

Before FLETCHER, CANBY and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

This case involves $10 million fraudulently transferred by wire from Community Bank of Hartford, South Dakota to Imperial Bank of Los Angeles, California. The Federal Deposit Insurance Corporation ("FDIC"), acting as Community Bank's receiver, seeks to hold Imperial Bank liable for negligence and asserts that the district court erred when it found no proximate cause. In a protective cross-appeal, Imperial Bank claims that the district court erred to the extent it found that Imperial negligently handled the wire transfer.

## FACTS AND PROCEEDINGS

Community Bank was formed in 1925. In 1939, Community began its association with Raymond Dana, a local attorney, allowing him to locate his law offices within its branches and hiring him as counsel. Eventually, Dana became president of Community Bank, as well as the executor of the estate which controls the bulk (85%) of the bank's stock. In addition, Dana and his wife owned ten percent outright; Dana effectively controlled Community Bank, having the right to vote 95% of the stock.

In March 1983, Dana met Anant Kumar Tripati, who made an offer to buy Community Bank, which Dana accepted. In the course of his dealings with Tripati, Dana also received a large number of gifts (worth $700,000 to $800,000). About the same time, Tripati opened a number of accounts at Imperial Bank in his name and in the name of Fort Lincoln, an insurance company he owned.

Imperial investigated Tripati, but it failed to turn up any information which would indicate that Tripati would commit bank fraud. Later, Imperial designated one of its employees, Robert Valdez, as the sole handler of Tripati's and Fort Lincoln's funds because Tripati and Fort Lincoln received large wire transfers. Tripati told Imperial's officers that (1) he was purchasing Community Bank and (2) several million dollars would come to Imperial Bank for him and Fort Lincoln by wire transfer from Community Bank. At about the same time, Dana directed Community Bank to borrow $10 million from a money broker so Tripati could invest in insurance annuities on behalf of Community Bank.

On March 31, 1983, Dana sent $2.8 million of the borrowed money to Imperial Bank for the attention of Valdez, who credited the funds to one of Tripati's accounts.

On April 2, 1983, Dana learned that the $2.8 million went into an account controlled by Tripati and that Tripati was receiving interest on the money. Dana then suspended subsequent transfers until Tripati assured him that (1) the sale of the bank would go through and (2) the $10 million annuity would be purchased. On April 5, Tripati gave Dana a receipt for a $4.5 million investment in commercial paper which Dana believed was payment toward the purchase of Community Bank. The same day, Dana learned that Fort Lincoln would issue the insurance annuities. On April 6, Dana resumed the transfers to Imperial Bank. By April 12, the entire $10 million had been transferred. Later, Tripati sent Dana a certificate for the $10 million annuity.

On May 9, 1983, Dana told the FDIC about his purchase of the $10 million annui-

ty. The FDIC told Dana to recover the funds. Dana did nothing; instead, he tried to complete the sale of Community Bank to Tripati.

On May 23, 1983, the FDIC again met with Dana. This time the FDIC ordered Dana to get the money back and take whatever steps were necessary to protect the bank. The next day, the FDIC and a state banking agency had a meeting with the Board of Directors of Community Bank. At this meeting, the FDIC told the Board that (1) the sale of the bank to Tripati was illegal; (2) the bank was on the edge of bankruptcy; (3) the bank had to get its money back from Tripati; and (4) in its opinion, Dana had operated the bank in an unsafe and unsound manner. In addition, the FDIC told the Board about the details of the annuity transaction.

Although Community's Board sent a letter to Tripati asking him to cancel the annuity, it failed to tie up Tripati's funds at Imperial (Tripati had sufficient funds to cover the $10 million transfer up until June 6). Instead, the Board continued to rely on Dana to extricate the bank from the annuity transaction.

On June 9, 1983, a state banking agency told Community that the bank must retrieve the $10 million or it would be closed on June 17. The directors did nothing and the state closed the bank as it had warned. At about the same time, the FDIC froze Tripati's Imperial accounts. At the time of the freeze, the accounts contained $2.7 million.

On June 17, 1983, the FDIC became Community Bank's receiver and as such acquired the right to pursue any claim the bank may have against Imperial. In 1985, the FDIC filed this action against Imperial. In 1987, the district court found that Imperial handled the wire transfer negligently but that its negligence was not the proximate cause of the loss. The FDIC filed a timely appeal. Imperial filed a timely cross-appeal which challenged the district court's finding that the bank acted negligently.

## DISCUSSION

### 1. *Proximate Cause*

FDIC vigorously asserts that the district court erred when it concluded that Imperial Bank was not the proximate cause of Community Bank's loss. First, it contends that the loss occurred in April 1983, when Imperial Bank credited a Tripati account with the transferred funds, and therefore it does not matter what Community Bank did thereafter. FDIC further argues that Community Bank cannot be held responsible for Dana's activities because he acted contrary to the interests of the bank. FDIC's view is that Imperial Bank caused the loss by crediting Tripati's account without inquiring of Community Bank about Dana's authority. We disagree.

Under California law,[1] proximate cause exists if the defendant both (1) in fact caused the injury and (2) could reasonably foresee the risk of injury. *See Powell v. Standard Brands Paint Co.*, 166 Cal. App.3d 357, 363, 212 Cal.Rptr. 395, 397 (1985).

The district court correctly decided that Imperial Bank's actions were not the proximate cause of the loss: the loss resulted from (1) Tripati's fraudulent conduct, (2) Dana's irresponsible activity, and (3) the Board's failure to act once on notice of the annuity transaction. Indeed, Imperial Bank, unlike Tripati, Dana, and the Board, never knew about the annuity scheme.

Furthermore, Imperial Bank could not have reasonably foreseen any loss. Imperial Bank knew nothing of the critical facts that surrounded the fraud. For example, Imperial Bank had no way of knowing that (1) Tripati had given Dana large gifts and therefore Dana might not act in Community Bank's best interests, (2) Tripati had misrepresented the money from the wire

---

1. When—as here—the FDIC brings a suit in its corporate capacity, federal law applies. *See* 12 U.S.C. § 1819(4). Under federal law the district court has the option of adopting the law of the state involved, but it is not bound to do so. *See* *FDIC v. Bank of San Francisco*, 817 F.2d 1395, 1398 (9th Cir.1987). Here, reliance on state law authority is appropriate in the absence of federal common law of torts.

transfers as his own, (3) the annuity investment deal existed, (4) the FDIC had told Dana to get the money back, and (5) the FDIC had ordered the Board to retrieve the funds.

■ FDIC's contentions are meritless. First, it is illogical to claim, as the FDIC does, that the loss occurred when Imperial Bank credited Tripati's account in April 1983; in fact, no loss occurred until early June 1983. Until then, Community Bank had remedies which could have frozen funds in Tripati's Imperial Bank account to the full extent of the amounts transferred. FDIC's rationale would have us find that Community Bank was under no obligation to try to recover its funds even though it knew that Tripati had defrauded it.

Second, the FDIC's argument about Dana's violations of his ethical duties to Community Bank (and the agency law defense this gives Community Bank against suits based on his actions) is completely beside the point. Even if agency law gives Community Bank a valid defense to suits arising out of Dana's actions, as the FDIC claims, this defense does not eviscerate the necessity of showing proximate cause before holding Imperial Bank liable for the loss. Obviously, Community Bank's alleged lack of liability does not make Imperial Bank liable.

Third, as already indicated above, Imperial Bank's crediting of Tripati's account was not the cause of the loss.

■ Finally, Imperial had no duty to ask Community Bank about Dana's authority. As a general rule, unless a special relationship gives rise to a duty to act, a defendant is under no duty to take affirmative action to assist or protect another, no matter how great the danger or how easily the defendant could prevent the injury. *See Stangle v. Fireman's Fund Ins. Co.*, 198 Cal.App. 3d 971, 972, 244 Cal.Rptr. 103, 104 (1988). Here, we conclude that Imperial Bank had no duty to take any affirmative steps to protect Community Bank, such as questioning Dana's authority or confirming the contents of the wire transfer. No special relationship existed between Imperial Bank and Community Bank. *See Mid–Cal Nat'l.*

*Bank v. Federal Reserve Bank*, 590 F.2d 761, 763 (9th Cir.1979) (no special relationship between two banks—Mid–Cal and Stockton—existed; thus, when Mid–Cal processed Stockton's check, it had no duty to discover a check-kite which subsequently injured Stockton).

### 2. *Contractual Liability*

■ The FDIC argues that Imperial Bank owed an implied contractual duty to Community Bank on a theory that Community Bank was its depositor, which duty was violated when it credited funds to Tripati's account without Community Bank's authorization. We disagree.

The evidence refutes the FDIC's argument that Community Bank was a depositor at Imperial Bank. There is no evidence that Community Bank ever opened an account at Imperial. Indeed, the wording of the wire transfers failed to indicate even an intent to open an account; it simply directed the funds to the attention of Valdez by order of Community Bank. Since Tripati had told Imperial Bank he would be receiving funds and that he had purchased Community Bank, Imperial Bank had no reason to assume that the wire transfers represented an attempt by Community Bank to create a depositor-bank relationship. Such a depositor-bank relationship and its attendant duties exist only when the prior dealings of the parties made the nature of the relationship clear. *See, e.g., Walker v. Texas Commerce Bank, N.A.*, 635 F.Supp. 678 (S.D.Tex.1986); *Wright v. Bank of California, N.A.*, 276 Cal.App.2d 485, 81 Cal.Rptr. 11 (1969).

### 3. *Imperial Bank's Negligence*

Since we conclude no proximate cause existed, we need not reach the issue presented by the cross appeal.

### CONCLUSION

Imperial Bank neither was the proximate cause of Community Bank's loss nor did it

have a bank-depositor relationship with Community Bank.

AFFIRMED.