Billy D. BARRON, Michael Robert Boehrer, Richard Gentilella, Lorna K. Johnasen, Carol Lynn Lara, and Roger Dale Watson, Plaintiffs,

v.

MARTIN–MARIETTA CORPORATION, et al., Defendants.

No. C–91–2565 EFL.

United States District Court,
N.D. California.

Nov. 3, 1994.

H. Greig Fowler, San Francisco, CA, for plaintiffs.

James M. Fitzsimons, Mendes & Mount, Los Angeles, CA, for defendants.

### ORDER DENYING SUMMARY JUDGMENT IN PART AND GRANTING IT IN PART

LYNCH, District Judge.

This is a products liability case in which plaintiffs seek recovery on theories of negligence and strict liability for injuries allegedly caused by exposure to toxic fumes that leaked from surface-to-air missiles and the canisters that encase these missiles. Defendants Martin–Marietta Corporation ("MMC") and Martin–Marietta Technical Services, Inc. ("MMTS") move this Court for summary judgment and/or summary adjudication of certain issues. The motion is denied in part and granted in part.

## FACTS

Plaintiffs were civilian employees of the United States Government, working at Concord Naval Weapons Station located in Contra Costa County, California. On August 23, 1990, they placed missile canisters in magazine storage after their removal from the transport ship USS Nannie Keg.

During the morning of August 23, Plaintiffs Billy D. Barron ("Barron"), Richard Gentilella ("Gentilella") and Lorna K. Johnasen ("Johnasen") loaded a single MMC canister into magazine storage. In the afternoon of the same day, plaintiffs Michael Boehrer ("Boehrer"), Carol Lynn Lara ("Lara") and Roger Dale Watson ("Watson") loaded six more canisters into the magazine. Of these six canisters, three were manufactured by MMC and three by IMI,[1] which is not a party to this suit.

While placing certain of the canisters in magazine storage, plaintiffs heard and smelled fumes leaking from the canisters. They became light headed and dizzy and abandoned the area. As a result of exposure to these fumes, plaintiffs claim to have suffered grievous personal injuries about the head, neck, torso and extremities, including injury to the nervous system and internal organs. Plaintiffs appear to claim additional, collective injuries including organic brain dysfunction, acute toxic encephalopathy, memory dysfunction, mild organic mood syndrome, mild gait dysfunction, respiratory irritation, acute inhalation injury with bronchospasm, sinusitis and depression.

Plaintiffs also claim to suffer from a fear of cancer but have adduced no evidence that they have suffered physical injuries with which there is a verifiable causal nexus to cancer. They have produced no evidence of exposure to a toxic substance which threatens cancer. Nor have they presented evidence that their fear of cancer stems from knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that they will develop cancer in the future due to toxic exposure.

A navy investigation of these incidents indicates that plaintiffs were most likely exposed to toluene. Post-incident tests indicate that two of the IMI canisters loaded in the afternoon contained high levels of toluene. The same tests show that two of the MMC canisters loaded in the afternoon contained low levels of toluene. The investigative report indicates that the fact the MMC canisters contained lower levels of toluene than the IMI canisters might be explained by the MMC canisters having leaked.

MMC manufactured its canisters pursuant to a contract between MMC and the U.S. Government. The contract provided for the design and manufacture of the MMC canisters according to specifications that were precise as to the general design of the canisters. Whether these specifications were reasonably precise regarding features that plaintiffs claim were defective is unclear.[2]

MMTS did not manufacture, design, test, or assemble any of the canisters involved. Neither MMC nor MMTS manufactured, designed, tested, assembled or sold the missiles that the canisters encase.

## DISCUSSION

Defendants move for summary judgment and/or summary adjudication on the following grounds: (1) the government contractor defense immunizes MMC from liability; (2) neither MMC's nor MMTS' missiles or canisters caused plaintiffs' injuries; and (3) plaintiffs cannot recover damages for "fear of cancer."

Summary judgment is appropriate where there is no genuine issue of material fact and judgment is proper as a matter of law. Fed. R.Civ.P. 56(c). To survive summary judgment, the opposing party must set forth specific facts showing that there is genuine dispute as to a material fact. Fed.R.Civ.P. 56(e). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477

---

1. The name of the entity represented by this acronym is unclear.

2. This uncertainty arises from an underlying uncertainty regarding whether in fact there were defects in the canisters and, if so, what in particular those defects were.

U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Absent such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Applying these rules, each basis of defendants' motion is considered in turn.

## I

The Court first considers defendants' motion for summary judgment on grounds of the government contractor defense. According to defendants, there is no genuine issue of material fact that the defense immunizes them from liability. Because the Court cannot agree, the motion on this ground is denied.

■ In *Boyle v. United Technologies Corp.,* 487 U.S. 500, 512, 108 S.Ct. 2510, 2518, 101 L.Ed.2d 442 (1988), the Supreme Court held that federal common law immunizes certain military contractors from the duties imposed by state tort law. The defense protects these contractors from liability where there is a significant conflict between their duties under state tort law and the duties imposed by their federal contract. *Id.* at 507, 512, 108 S.Ct. at 2516, 2518. Liability for design defects in military equipment cannot be imposed on military contractors, pursuant to state law, "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512, 108 S.Ct. at 2518.

The precise relationship between the requirement that the government contractor defense apply only where there is a significant conflict between duties under state tort law and duties imposed by federal contract and the three requirements enumerated in *Boyle* is nowhere elaborated in the *Boyle* decision. However, the Second Circuit recently considered their relationship in *Lewis v. Babcock Industries, Inc.,* 985 F.2d 83, 86 (2nd Cir.1993).

In *Lewis,* the court held that the requirement of conflict, as well as a requirement of an exercise of government discretion, is part of the *Boyle* test and not a prerequisite to it. *Id.* at 86. The Court indicated that "the purpose of the first part of the test, approval of reasonably precise specifications, is to determine whether a conflict with state law exists at all." *Id.* "[A] federally imposed contract requirement," the Court explained, "displaces only a parallel state law requirement." *Id.* According to the Court

■f the Government did not approve reasonably precise specifications for the design feature in question there is no conflict with state law. On the other hand, if the Government did approve such specifications, conflicting state tort law is preempted. Thus, answering the question whether the Government approved reasonably precise specifications for the design feature in question necessarily answers the question whether the federal contract conflicts with state law.

*Id.* at 86–87.

■ Whether viewed as an independent requirement or part-and-parcel of Boyle's three-part inquiry, for the government contractor defense to apply, there must be a significant conflict between duties under state tort law and duties imposed by federal contract. *Boyle,* 487 U.S. at 508, 108 S.Ct. at 2516; *Nielsen v. George Diamond Vogel Paint Co.,* 892 F.2d 1450, 1454–55 (9th Cir. 1990); *Lewis,* 985 F.2d at 86. As made plain in *Lewis,* there is no such conflict with state law where the government does not approve reasonably precise specifications for the design feature in question. 985 F.2d at 86–87.

The *Boyle* Court illustrated the nature of the conflict required. The Court hypothesized a situation as follows:

the United States contracts for the purchase and installation of an air-conditioning unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. The contractor could comply with both its

contractual obligations and the state-prescribed duty of care.

*Id.* at 509, 108 S.Ct. at 2517. "No one suggests," the Court said, "that state law would generally be pre-empted in this context." *Id.* The requisite conflict exits only where a contractor cannot at the same time comply with duties under state law and duties under a federal contract.

■ Turning to the evidence presented, the Court must determine whether, viewing the facts in the light most favorable to plaintiffs, there is a genuine issue of material fact whether the government contractor defense applies. In so doing, the Court must view the evidence through the prism of defendants' burden to prove its application by a preponderance of the evidence. *McKay v. Rockwell Intern. Corp.,* 704 F.2d 444, 450 (9th Cir.1983), *cert. denied,* 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984). To prevail on their motion, defendants must show that there are no triable issues of material fact as to whether the elements of the defense are satisfied. *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986).

■ Considering only whether the United States approved reasonably precise specifications as to a defective feature in the canisters, there is a genuine issue of material fact. The evidence suggests that the United States approved reasonably precise specifications regarding the general design of the MMC canisters. However, the evidence regarding whether the government approved such specifications as to defective features in the canisters is sparse, unclear and in dispute.

As discussed above, for the Court to grant summary judgment, there must be no triable issue that the United States required a particular design feature that has proven defective. Because there is a genuine dispute on this point, there is also a genuine dispute whether MMC's duties under state law conflict with its duties under its federal contract. Defendants' motion for summary judgment on grounds of the government contractor defense is therefore denied.

**II**

Next the Court considers defendants' motion for summary judgment and/or adjudication on grounds that neither their missiles nor their canisters caused plaintiffs' injuries. According to defendants, there is no genuine issue of material fact that either missiles or canisters manufactured by MMC or MMTS caused plaintiffs' injuries. The Court agrees in part and disagrees in part.

■ Causation is a necessary element of plaintiffs' claims for negligence and strict liability. *See, e.g., Bigbee v. Pacific Tel. and Tel. Co.,* 34 Cal.3d 49, 192 Cal.Rptr. 857, 859, 665 P.2d 947, 949 (1983); *Powell v. Standard Brands Paint Co.,* 166 Cal.App.3d 357, 363, 212 Cal.Rptr. 395 (1985).[3] The undisputed evidence shows, and the plaintiffs concede, that neither MMC nor MMTS manufactured, designed, tested, or assembled the missiles at issue, and that MMTS did not manufacture, design, test or assemble the canisters involved. Thus, as to plaintiffs' claims regarding missiles and MMTS canisters, there is no genuine issue of material fact that defendants did not cause plaintiffs' injuries. Defendants are, therefore, entitled to judgment and/or adjudication as a matter of law on these claims.

■ Plaintiffs Barron, Gentilella and Johnasen testify that they were exposed to a single MMC canister and that they heard and smelled fumes leaking from it. As a consequence, these plaintiffs claim, they became dizzy and light headed and have since suffered a myriad of physical and emotional injuries. Bare as they are, these facts suffice to create a genuine dispute whether the MMC canister in question caused plaintiffs' injuries. Therefore, as to plaintiffs Barron, Gentilella and Johnasen, defendants' motion is denied.

■ Whether there is a genuine issue of material fact that canisters manufactured by MMC caused plaintiffs Boehrer's, Lara's and Watson's injuries is not so easily ascertained and depends largely on the allocation of the

---

**3.** Under *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the substantive law of California applies.

burden of proof. On a motion for summary judgment, the Court "must view the evidence presented through the prism of the substantive burden." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. To avoid summary judgment, an opposing party must present affirmative evidence on matters as to which it has the burden of proof at trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

 While ordinarily the plaintiff bears the burden to show causation as part of a prima facie case of negligence or strict liability, *see Bigbee,* 665 P.2d at 949; *Powell,* 166 Cal.App.3d at 363, 212 Cal.Rptr. 395, the plaintiffs claim this case calls for a shifting of the burden on causation to the defendants. Burden shifting of this kind may be appropriate where the plaintiff does not know the identity of the actual tortfeasor, *see Doe v. Cutter Biological, Inc.,* 971 F.2d 375, 379 (9th Cir.1992), but the Court cannot agree that this is such a case.

 Several alternatives have developed to handle the situation of multiple possible tortfeasors: (1) alternative liability; (2) enterprise liability; and (3) market share liability. *See id.* According to the doctrine of alternative liability, where several defendants act tortiously and it is not possible to determine which defendant caused plaintiff's injury, the burden shifts to defendants to prove they did not cause the injury. *See, e.g., Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948). If a plaintiff can prove that an entire industry was tortious, the doctrine of enterprise liability shifts the burden to members of that industry to prove that they did not supply the specific product that caused

the injury. *See, e.g., Hall v. E.I. Du Pont,* 345 F.Supp. 353 (E.D.N.Y.1972). Under the doctrine of market share liability, where it is impossible for the plaintiff to prove which member of the market was responsible for the injury, each member of the market is responsible for a percentage of the recovery matching its share of the market. *See, e.g., Sindell v. Abbott Lab.,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, *cert. denied,* 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980).

Plaintiffs appear to ground their claim that the burden to show causation must shift to the defendants on a theory of alternative liability.[4] The landmark case on alternative liability is *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948). In *Summers,* defendants, two hunters, negligently fired their guns at a quail rising in flight in the direction of plaintiff, their hunting companion. *Id.* 199 P.2d at 2. Shot struck the plaintiff in the eye and upper lip, but it was impossible to determine which defendant fired the shot and plaintiff sued both. *Id.* The California Supreme Court held that the burden shifted to each defendant to show that he did not cause the injury. *Id.* 199 P.2d at 2–5.

 The burden shifts to the defendants on the theory set out in *Summers* where, among other things, (1) all of the defendants acted tortiously, *see, e.g., Zands v. Nelson,* 797 F.Supp. 805, 813 (S.D.Cal.1992) (citing *Abel v. Eli Lilly & Co.,* 418 Mich. 311, 343 N.W.2d 164, 173 (1984), *cert. denied,* 469 U.S. 833, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984)), and (2) the plaintiff was harmed by the conduct of at least one of the defendants, and thus plaintiff brings all defendants before the court.[5] *See, e.g., Zands,* 797 F.Supp. at 813;

---

**4.** Plaintiffs advance no argument or evidence that the burden of proof must shift to the defendants on theories of enterprise liability or market share liability.

**5.** Comment (g) to the Restatement (Second) of Torts § 433B(3) (1965) recognizes the possibility that "cases may arise in which some modification of the rule stated may be necessary because of complications arising from the fact that one of the actors involved is not or cannot be joined as a defendant." At least one California case has held as much. *See Vahey v. Sacia,* 126 Cal. App.3d 171, 177, 178 Cal.Rptr. 559 (1981) (per-

mitting the burden to shift where case goes to trial only as against non-settling defendant on grounds "*Summers* applies to multiple tortfeasors not to multiple defendants").

Notwithstanding the fact that shifting the burden to the defendants where not all of the parties who could have been responsible for the harm have been joined appears contrary to the weight of authority, plaintiffs have failed to demonstrate that such an exception must, or even should, apply here. Plaintiffs have presented no persuasive argument or evidence, such as that they settled with IMI or that it is bankrupt, to that effect. Plaintiffs must designate and reference

*Long v. Krueger, Inc.,* 686 F.Supp. 514, 517–19 (E.D.Pa.1988) (granting defendants' motion for summary judgment where plaintiff failed to name as defendants all those who could have caused the injury); Restatement (Second) of Torts § 433B(3) (1965); *see also In re Agent Orange Product Litigation,* 597 F.Supp. 740, 826 (E.D.N.Y.1984) (Weinstein, J.) (discussing alternative liability and its variations).[6]

■ Plaintiffs have not come forward with adequate evidence that MMC acted tortiously with respect to Boehrer, Lara and Watson. Boehrer, Lara and Watson merely testify that they heard and smelled fumes while loading canisters into magazine storage and then became dizzy and light headed. Unlike the morning plaintiffs, Boehrer, Lara and Watson were exposed to six canisters—three of which were manufactured by MMC and three by IMI—rather than just one, and cannot identify which of the six canisters leaked the fumes they heard and smelled.

Nor have plaintiffs brought all potential defendants before the court. Not only was IMI apparently never sued, but nothing in the evidence indicates that someone other than MMC or IMI, such as a transporter or warehouser of the canisters, might not have been responsible for plaintiffs' injuries. Moreover, plaintiffs have pointed to no evidence that might permit relaxation of this requirement. *See supra* n. 5.

Therefore, the burden to prove causation does not shift to MMC, and Boehrer, Lara and Watson must present affirmative evidence that the MMC canisters caused their injuries in order to avoid summary judgment.

Out of an abundance of caution, the Court made plaintiffs aware of its inclination to grant summary judgment as to Boehrer, Lara and Watson and requested they submit for the Court's review a memorandum highlighting any and all evidence that MMC caused these plaintiffs' injuries. That additional opportunity to show evidence of cause notwithstanding, plaintiffs have failed to sustain their burden of proof as set out below.

In support of their claim that the MMC canisters caused Boehrer's, Lara's and Watson's injuries, plaintiffs advance two arguments. First, plaintiffs appear to contend that since the evidence that an MMC canister caused injury to Barron, Gentilella and Johnasen during the morning incident is sufficient to withstand summary judgment, and the afternoon incident is substantially similar to the morning incident and followed closely on its heels, the MMC canisters, as opposed to the IMI canisters, must have caused plaintiffs' injuries. Second, plaintiffs appear to argue that the fact that post-incident tests showed two of the IMI canisters contained high levels of toluene and two of the MMC canisters contained low levels of toluene demonstrate that the MMC canisters must have leaked toluene—explaining the lower level of toluene in the MMC canisters as compared to the IMI canisters—and caused plaintiffs' injuries.

Although the evidence admits the possibility of plaintiffs' arguments, it is insufficient to support them for purposes of withstanding summary judgment. Plaintiffs must come forward with enough evidence to show the MMC canisters caused their injuries, not just that they might have. There is no testimony from plaintiffs as to which of the six canisters leaked the fumes they heard and smelled. Nor do plaintiffs come forward with expert testimony showing that the MMC canisters,

---

specific triable facts; the Court is not obligated to consider matters not specifically brought to its attention. *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988).

**6.** The BAJI instruction for when a precise cause cannot be identified is set out below.

If the plaintiff establishes by a preponderance of the evidence all of the facts necessary to prove (1) that each of the defendants was negligent, and (2) that the negligent act of one of the defendants was a cause of plaintiff's injury, and (3) that the injury was such that it could only result from the negligent act of one of the defendants, and (4) that from the circumstances of the accident the plaintiff cannot reasonably establish which defendant's negligence was a cause of the injury, then you will find that each defendant is liable for the injury.

However, under such circumstances, a defendant is not liable if [he] [she] establishes by a preponderance of the evidence all of the facts necessary to prove that [his] [her] negligence was not a proximate legal cause of plaintiff's injury.

BAJI No. 3.80 (7th ed. 1994).

as opposed to the IMI canisters, caused plaintiffs' injuries. All plaintiffs have submitted is the Navy's investigative report, which merely recognizes the obvious fact that the comparatively low level of toluene in the MMC canisters might be explained by their having leaked.[7] Plaintiffs have presented no affirmative expert testimony that such is the case. As to Boehrer, Lara and Watson, then, there is no genuine issue of material fact. Defendants are entitled to judgment as a matter of law as to these plaintiffs.

## III

Finally, the Court considers defendants' motion for summary adjudication on grounds plaintiffs cannot, as a matter of law, recover damages for "fear of cancer." Defendants claim there is no genuine issue of material fact that plaintiffs can recover for fear of cancer. As elaborated below, the Court agrees.

As with any item of damages, the availability of recovery for fear of cancer is a matter of substantive law, determined in a negligence and strict liability case under the law of the forum state, here California. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Whether, under California law, emotional distress engendered by the fear of developing cancer in the future as a result of toxic exposure is a recoverable item of damages is a question of recently elaborated, but still uncertain, dimension.

The California Supreme Court considered the issue in *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993). In *Potter,* residents living near a landfill that prohibited toxic substances brought an action against a tire company that dumped toxic waste materials at the site. 6 Cal.4th at 975, 25 Cal.Rptr.2d 550, 863 P.2d 795. The residents claimed

that the toxic substances contaminated their water supply and that as a result they suffered, among other things, emotional distress engendered by a fear of developing cancer in the future. *Id.*

The *Potter* Court discussed recovery for fear of cancer in actions for both negligence and intentional infliction of emotional distress.[8] *Id.* at 980–1000, 25 Cal.Rptr.2d 550, 863 P.2d 795. In actions for negligence, the Court recognized the availability of recovery for parasitic fear of cancer and nonparasitic fear of cancer. *Id.* Each is considered in turn.

### A

In *Potter* the Court recognized the availability of parasitic damages for emotional distress engendered by a fear of developing cancer in the future as an issue of first impression in California but declined to resolve it. *Id.* at 982, 25 Cal.Rptr.2d 550, 863 P.2d 795. According to the Court, it lacked an appropriate factual record to decide the specific issue presented. *Id.* at 984, 25 Cal. Rptr.2d 550, 863 P.2d 795. Because the issue is unresolved in California[9] and the instant case requires its determination, this Court must consider how the California courts would resolve the matter were it presented. *General Motors Corp. v. Doupnik,* 1 F.3d 862, 865 (9th Cir.1993) (citing *C.I.R. v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)).

The *Potter* Court's restraint notwithstanding, its decision revealed something of its view on the availability of parasitic damages for fear of cancer. By implication, the Court indicated it would recognize such damages. It cited cases from other jurisdictions concluding that parasitic damages for emotional distress engendered by a fear of cancer are

---

7. If anything, the higher level of toluene found in the IMI canisters seems to point more to IMI than to MMC as the culprit responsible for plaintiffs' injuries.

8. Because plaintiffs make no claim for intentional infliction of emotional distress, the Court need not, and therefore will not, address recovery for fear of cancer in that context.

9. Neither *Potter,* nor California decisions decided subsequent to *Potter,* appear to have elaborated

on the type of physical injury that permits recovery of parasitic damages for fear of cancer. *E.g., Bro v. Glaser,* 22 Cal.App.4th 1398, 27 Cal. Rptr.2d 894 (1994); *Herbert v. Regents of the University of California,* 26 Cal.App.4th 782, 31 Cal.Rptr.2d 709 (1994); *Duarte v. Zachariah,* 22 Cal.App.4th 1652, 28 Cal.Rptr.2d 88 (1994); *Lopez v. Leal,* 24 Cal.App.4th 33, 29 Cal.Rptr.2d 832 (1994).

recoverable where they are derivative of a claim for serious physical injury,[10] and then considered whether impairment of the immune response system and cellular damage constitute sufficient physical injury to allow recovery. *Potter*, 6 Cal.4th at 982–84, 25 Cal.Rptr.2d 550, 863 P.2d 795. The opinion's focus on the type of physical injury required to allow recovery of parasitic damages for fear of cancer appears to embrace the decision of other jurisdictions to allow them.

Assuming then that parasitic damages for fear of cancer are available in California, as in the jurisdictions referred to in *Potter*, the question arises as to the circumstances in which these damages are available. Not only must they be derivative of serious physical injury, but by their terms, they must be parasitic of the physical injury involved. *Id.* What this means, though—the circumstances in which parasitic damages for fear of cancer are available—is, nevertheless, in dispute.

Plaintiffs here allege grievous personal injuries about the head, neck, torso and extremities, including injury to the nervous system and internal organs. They also appear to claim additional collective injuries including organic brain dysfunction, acute toxic encephalopathy, memory dysfunction, mild organic mood syndrome, mild gait dysfunction, respiratory irritation, acute inhalation injury with bronchospasm, sinusitis and depression.[11]

According to plaintiffs, these injuries are a sufficient predicate to recovery for fear of cancer. According to defendants, emotional distress for fear of cancer is not parasitic to the physical injuries plaintiffs allege. To resolve the dispute, this Court must identify and apply criteria to distinguish those serious physical injuries on which damages for fear of cancer may be parasitic from those on which they may not.

The decisions that the *Potter* Court cites for the proposition that parasitic damages for fear of cancer are recoverable suggest the type of serious physical injury for which parasitic damages for fear of cancer may be recovered. Common to these decisions is a verifiable causal nexus between cancer and the injury suffered. *See Ferrara*, 152 N.E.2d at 251–52 (permitting fear-of-cancer damages arising from tissue identified by dermatologist as susceptible to development of cancer); *Dempsey*, 94 F.Supp. at 920–921 (same arising from traumatic breast injury); *Alley*, 74 S.E. at 886 (same arising from burn wound).

That California courts would require such a nexus seems clear. If no nexus were required between cancer and an alleged injury, an injury akin to a spinal puncture, serious but unrelated to cancer, would admit recovery of parasitic damages for fear of cancer. Indeed, any serious physical injury, however unrelated to cancer, would permit fear-of-cancer damages.

Predicating recovery on a showing of nexus comports with California precedent that anxiety specifically due to reasonable fear of a future harm attributable to the injury may constitute a proper element of damages. *E.g., Jones v. United R.R. of San Francisco*, 54 Cal.App. 744, 202 P. 919 (1921) (affirming damages for emotional distress endured up to time of trial where plaintiff reasonably feared permanent disability in the future as direct and proximate result from physical injury received in the accident). A requirement of nexus simply ensures that the fear of cancer attributable to the injury be reasonable.

Accordingly, this Court finds that California courts would allow parasitic damages for fear of cancer. Were these courts to consid-

---

**10.** *See Ferrara v. Galluchio*, 5 N.Y.2d 16, 176 N.Y.S.2d 996, 998–99, 152 N.E.2d 249, 251–52 (1958) (upholding an award of emotional distress damages based on the plaintiff's fear of cancer where she had been advised by a dermatologist to have her tissue examined every six months as cancer might develop); *Dempsey v. Hartley*, 94 F.Supp. 918, 920, 921 (E.D.Pa.1951) (same regarding fear of breast cancer due to traumatic breast injury); *Alley v. Charlotte Pipe & Foundry Co.*, 159 N.C. 327, 74 S.E. 885, 886 (1912) (same

concerning fear stemming from sarcoma liable to ensue from burn wound).

**11.** Little admissible evidence of these injuries appears in the record. Moreover, plaintiffs have not specifically directed the Court to admissible evidence of these injuries, as is their burden in opposing summary judgment, *See Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir. 1988).

er the issue, they would, it seems to this Court, find that a physical injury permits recovery of parasitic damages for fear of cancer where there is a verifiable causal nexus between the injury and developing cancer. That decided, the Court turns further to the evidence adduced.

 Even assuming plaintiffs have adequately presented evidence of the physical injuries they claim, plaintiffs have produced no evidence of a verifiable causal nexus between their injuries and their developing cancer. They have not presented any expert evidence, for example, that there is a reasonable medical possibility that injuries of the kind they have suffered give rise to cancer. Plaintiffs merely assert that they fear they will develop cancer in the future. In view of the rules set out above, these assertions, standing alone, are insufficient to permit recovery of parasitic damages for fear of cancer. Defendants are, therefore, entitled to adjudication of this issue in their favor.

### B

Nonparasitic damages, according to *Potter*, are available "only if the plaintiff pleads and proves that (1) as a result of the defendant's negligent breach of a duty owed to the plaintiff, the plaintiff is exposed to a toxic substance which threatens cancer; *and* (2) the plaintiff's fear stems from a knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that the plaintiff will develop the cancer in the future due to the toxic exposure." 6 Cal.4th at 997, 25 Cal.Rptr.2d 550, 863 P.2d 795.[12]

Plaintiffs have presented no evidence of exposure to a toxic substance which threatens cancer. Nor have they presented any evidence their fear of cancer stems from a knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that they will develop cancer in the future due to such exposure. Accordingly, plaintiffs may not recover nonparasitic dam-

ages for fear of cancer, and defendants are entitled to summary adjudication here as well.

### CONCLUSION

Because there are triable issues whether (1) the government contractor defense applies and (2) whether an MMC canister caused Barron's, Gentilella's and Johnasen's injuries, defendants' motion for summary judgement on these claims is DENIED.

There is no genuine dispute of material fact (1) that MMC and MMTS did not manufacture, design, test, or assemble the missiles involved; (2) that MMTS did not manufacture, design, test, assemble or sell the canisters involved; (3) that the plaintiffs have come forward with no relevant admissible evidence that MMC canisters caused Boehrer's, Lara's and Watson's injuries; and (4) that plaintiffs may not recover damages for fear of cancer. Thus, defendants motion for summary judgment is GRANTED as to MMTS, Boehrer, Lara and Watson. The motion for summary adjudication is GRANTED as to any claim against MMC missiles and any claim for damages based on fear of cancer.

IT IS SO ORDERED.

---

12. California law permits an exception to this rule where a defendant acts with oppression, fraud or malice. *Id.* at 997–1000, 25 Cal.Rptr.2d 550, 863 P.2d 795. In such circumstances, a plaintiff need only show that her fear of cancer is reasonable, genuine and serious; the more likely than not threshold need not be applied. *Id.* Plaintiffs have come forward with no evidence to this effect.